UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| JANE DOE (K.R.) | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. |
| | § | 6:23-cv-01012-WWB-LHP |
| CHOICE HOTELS, WHG SU | § | |
| DELEGATES, LLC, CHOICE | § | |
| HOTELS INTERNATIONAL, | § | |
| INC., AND CHOICE HOTELS | § | |
| INTERNATIONAL SERVICES | § | |
| CORP. | § | |
| Defendants. | § | |

## PLAINTIFF JANE DOE (K.R.)'S RESPONSE IN OPPOSITION TO DEFENDANT WHG SU DELEGATES, LLC'S MOTION TO DISMISS

COMES NOW JANE DOE (K.R.), Plaintiff in the above-styled and numbered cause, and files this Response in Opposition to Defendant WHG SU Delegates, LLC's Motion to Dismiss, and respectfully shows the Court as follows:

## ORAL ARGUMENT REQUESTED

Plaintiff Jane Doe (K.R.) files this opposition to the Motion to Dismiss of WHG SU Delegates, LLC ("WHG SU"). K.R. requests oral argument to fully present her position in this matter.

## INTRODUCTION

The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581, *et seq*., creates a civil remedy against businesses that—while not criminally liable for sex trafficking—benefit from facilitating it. *See* 18 U.S.C. § 1595(a). In the

most recent circuit-level decision on TVPRA liability,[1] the Seventh Circuit recognized that § 1595(a) reflects Congress's judgment that the fight against trafficking requires expanding liability beyond sex buyers and sellers. *G.G. v. Salesforce.Com, Inc.*, 76 F.4th 544 (7th Cir. 2023). This is sound policy and follows ordinary principles of responsibility: a person walking by a pond need not search for struggling swimmers, but one who profits by operating a waterpark is held to a different standard. Similarly, businesses that profit by facilitating trafficking are responsible for harm this causes.

Traffickers who forced K.R. to engage in commercial sex repeatedly chose an Orlando hotel ("Suburban Orlando") as the site for her exploitation. (ECF No. 1 ¶ 30). WHG SU owned the Suburban Orlando and, together with Choice, operated the hotel. (*Id.* ¶ 31). WHG SU's conduct made this hotel a favorable venue for trafficking. (*Id.* ¶¶ 6-7). Though WHG SU knew or should have known this, it continued benefitting from this trafficking. (*Id.* ¶ 7). K.R. thus sues WHG SU under the TVPRA.[2] WHG SU argues that the TVPRA provides no remedy to a trafficking victim repeatedly exploited at a defendant's hotel, even if the defendant knew or should have known it was profiting from ongoing trafficking at the hotel. But this argument "seek[s] to impose restrictions on the civil remedy created by Congress that are not consistent" with the

---

[1] Civil liability based on violation of criminal law is known as **perpetrator** liability. Some courts applying § 1595(a) have referred to the civil cause of action against a defendant who benefits from sex trafficking but does not violate the criminal law as **beneficiary** liability. In its recent decision, the Seventh Circuit used the term **participant** liability. These terms are interchangeable.

[2] K.R. has also sued three affiliated entities that act together as franchisor for the Suburban Orland, which she refers to collectively as "Choice." (ECF No. 1. ¶ 16). K.R.'s claims against Choice are addressed in a separate motion.

text of § 1595(a) or current case law. *G.G.,* 76 F.4th at 548. This would undermine Congress's policy choice to target both perpetrators **and** profiters.

## FACTUAL OVERVIEW

K.R. is a victim of sex trafficking. (ECF No. 1 ¶ 8). While only 18, she was drugged, physically abused, manipulated, and otherwise coerced to engage in commercial sex for her trafficker's benefit at the Suburban Orlando. (*Id.* ¶ 22-24).

WHG SU knew that sex trafficking was a problem in the hotel industry and at the Suburban Orlando specifically. (*Id.* ¶¶ 36, 50-55). Sex slavery is pervasive in the United States, and hotels are the primary place it happens. (*Id.* ¶ 37). Government agencies and other organizations have issued guidelines advising the hotel industry on how to detect signs of trafficking and respond appropriately. (*Id.* ¶ 38-39). WHG SU also knew or should have known about widespread sex trafficking at the Suburban Orlando specifically. Online reviews confirm obvious and apparent indicia of drug use and commercial sex that were ongoing at the hotel. (*Id.* ¶ 52). Hotel staff observed obvious signs of sex trafficking and other criminal activity at the hotel. (*Id.* ¶ 53). Because criminal activity was openly tolerated, traffickers operated with little concern for concealment. (*Id.* ¶ 54). There was an implicit understanding between hotel staff and the traffickers who used the property for their criminal pursuits. (*Id.*)

While K.R.'s traffickers kept her imprisoned at the Suburban Orlando, there were many obvious signs she was being trafficked, which mirrored the recognized "red flags" for trafficking in a hotel environment. (*Id.* ¶¶ 25-26, 35, 58). These signs were observed by hotel staff, which were employees of WHG SU. (*Id.* ¶¶ 25-28, 32).

Despite being only 18, K.R. provided hotel staff with thousands of dollars in cash when paying for hotel rooms, which were often in her trafficker's name. (*Id.*) Hotel staff saw 18-year-old K.R. with her trafficker, a much older man. (*Id.*) K.R. arrived for extended stays with little or no luggage. (*Id.* ¶ 58). She wore inappropriate attire and had a nervous demeanor when interacting with staff. (*Id.* ¶ 27, 59). K.R. often encountered the same hotel employees, who observed the obvious physical deterioration that resulted from the malnourishment, stress, and physical abuse that she endured during the 12 weeks she was trafficked at the hotel. (*Id.* ¶ 58). A large volume of men (who were not registered hotel guests) went in and out of K.R.'s room after short visits, and housekeeping found excessive sex paraphernalia when allowed to enter the room. (*Id.*) Moreover, hotel staff saw a 'john' fleeing from K.R.'s room after physically assaulting her. (*Id.* ¶ 28). K.R. exited her room to see where the assailant headed, bloodied, bruised, screaming, and wearing only undergarments. (*Id.*) Housekeeping staff were present but did nothing. (*Id.*)

K.R. was repeatedly placed in rooms at the rear of the hotel where prostitution and drugs ran rampant. (*Id.* ¶ 26). Hotel staff also made comments showing knowledge, including repeatedly asking her if she would be staying the entire night or checking out soon, even though the hotel did not rent rooms by the hour. (*Id.* ¶ 27). Despite obvious signs of K.R.'s trafficking, WHG SU kept providing a venue for her exploitation. (*Id.* ¶¶ 54, 63-67). WHG SU generated revenue each time a room was rented to a trafficker, including K.R.'s. (Id. ¶ 84).

## **STANDARD OF REVIEW**

To overcome a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff must plead enough to "raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id*. A court must take a plaintiff's well-pled allegations as true and draw all reasonable inferences for the plaintiff. *Id*. Allegations that contain details beyond a formulaic recitation of elements are factual allegations that the Court should credit when reviewing a 12(b)(6) motion. *J.G. v. Northbrook Indus.*, 619 F. Supp. 3d 1228, 1237 (N.D. Ga. 2022). This federal pleading standard is not demanding, asking that a plaintiff allege "only enough facts" to "nudge" a claim "across the line from conceivable to plausible." *G.G.*, 76 F.4th at 551.

## **ARGUMENT**

The TVPRA imposes civil liability against those who know or should know they are profiting by facilitating sex trafficking. Two provisions are relevant here. **First**, § 1591 imposes **criminal penalties** for:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . . or any combination of such means will be used to cause the person to engage in a commercial sex act . . . .

18 U.S.C. § 1591 (a). Thus, a business is criminally liable for sex trafficking if (1) it traffics a victim knowing or in reckless disregard of the fact that the victim will be coerced into sexual activity, 18 U.S.C. § 1591(a)(1)); or (2) benefits from knowingly facilitating a sex trafficking violation, 18 U.S.C. § 1591 (a)(2)).

**Second**, § 1595 (a) creates a civil cause of action both against perpetrators who violate § 1591 **and** against beneficiaries. The civil beneficiary liability created by § 1595 (a) stems from Congress's choice to expand the TVPRA's scope. *A.B. v. Marriott Int'l, Inc.,* 455 F. Supp. 3d 171, 180-9 (E.D. Pa. 2020). A key distinction from criminal venture liability under § 1591 (a)(2) is that a beneficiary is liable under § 1595 (a) if it **should have known** that it was facilitating trafficking. *Id.* at 188. Use of this standard "evidences Congress's intent to broaden the behavior that can form the basis of civil liability to participation in ventures where the defendant knew or should have known that the venture was involved in sex trafficking." *M.A. v. Choice Hotels & Resorts, Inc.,* 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (cleaned up). This provides victims "a cause of action against those who have profited from their exploitation." *A.B.*, 455 F. Supp. 3d at 181 (cleaned up). K.R. alleges WHG SU is liable both as a beneficiary and a perpetrator.

## I.   K.R. states a beneficiary claim against WHG SU.

K.R. states a beneficiary claim against WHG SU directly. A claim against a hotel defendant who knew or should have known it was providing a venue for trafficking falls squarely within the scope of § 1595(a). The initial case applying § 1595(a) liability to a hotel defendant came from the First Circuit in *Ricchio v.*

*McLean*, 853 F.3d 553, 556 (1st Cir. 2009). The *Ricchio* Court reversed the district court's dismissal of TVPRA claims against the owner-operator of a hotel who had rented rooms to traffickers. It reasoned that the hotel defendants created a venture with the traffickers through an implicit agreement to continue renting rooms to the traffickers despite obvious signs of their unlawful activity. *Id.* Following *Ricchio*, courts have applied beneficiary liability to hotel defendants.[3] In the most recent circuit-level opinion, the Seventh Circuit endorsed broad application of beneficiary liability to those who profit from commercial relationships that facilitate trafficking. *See G.G.*, 76 F.4th at 561.

WHG SU's relies heavily on the Eleventh Circuit's decision in *Doe v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which affirmed dismissal of § 1595(a) claims against franchisor-defendants. But, properly read, *Doe* does not support WHG SU's arguments. **First**, the *Doe* Court based its decision on the sole venture theory that the plaintiffs there had alleged: that the franchisors participated in "sex trafficking ventures." *Id.* at 726. The *Doe* Court recognized that the plaintiffs could have pled that the franchisors participated in "commercial ventures" that violated

---

[3] *See, e.g.*, J.*G. v. Northbrook Indus.*, 619 F. Supp. 3d at 1237; *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1318 (N.D. Ga. 2022); *M.A*, 425 F. Supp. 3d at 964; *A.B.*, 455 F. Supp. 3d at 186; *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 U.S. Dist. LEXIS 84861 at *6-7 (E.D. Cal. 2023); *J.C. v. Choice Hotels Int'l, Inc.*, No. 20-cv-00155-WHO, 2020 U.S. Dist. LEXIS 201073, at *1 (N.D. Cal. 2020; *Doe v. Rickey Patel, LLC*, No. 0:20-60683, 2020 U.S. Dist. LEXIS 195811, at *32 (S.D. Fla. 2020); *M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, at *17 (W.D. Wash. 2020); *H.H v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 U.S. Dist. LEXIS 211090 (S.D. Ohio 2019); *S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:19-CV-1194, 2020 U.S. Dist. LEXIS 44961, at *2 (S.D. Ohio 2020); *A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *2 (E.D. Va. 2020); *K.B. v. Inter-Continental Hotels Corp.*, No. 19-cv-1213-AJ, 2020 U.S. Dist. LEXIS 250721, *13 (D.N.H. 2020) .

the TVPRA but had not and had declined a chance to amend. *Id.* at 727; *G.G.*, 76 F.4th at 561. By contrast, K.R. alleges that WHG SU engaged in commercial ventures violating the TVPRA, making *Doe* inapplicable.[4]

**Second**, the *Doe* plaintiffs had made only conclusory allegations of the franchisors' involvement at the hotels. 21 F.4th at 727. By contrast, K.R. alleges that WHG SU was the owner and, together with Choice, directly operated the hotel. *Doe* **supports** imposition of liability against a defendant directly involved in hotel operations:

> Far from standing for the proposition that a franchisee cannot be liable for knowingly participating in a sex trafficking operation, Doe unequivocally and expressly stands for the proposition that a franchisee can be held liable under the TVPRA.[5]

*Doe*'s reasoning thus supports K.R.'s claim against WHG SU. *See A.W.*, 2022 U.S. Dist. LEXIS 227437, at *25.

K.R. states a beneficiary claim against WHG SU based on its role in a non-criminal venture that facilitated sex trafficking at the Suburban Orlando. To state a beneficiary claim, K.R. must allege that (1) that she is a victim of trafficking under §1591(a); (2) the defendant knowingly benefited or received something of value; (3) from participation in a venture; (4) which the defendant knew or should have known was engaged in a violation of the TVPRA. *Id.* The first element is not disputed for purposes of this motion. K.R. has plausibly pled the remaining three.

---

[4] *See A.W. v. Red Roof Inns, Inc.*, No. 2:21-cv-04934, 2022 U.S. Dist. LEXIS 227437 at *25 (S.D. Ohio 2022).

[5] *N.G. v. BW RRI III LLC*, No. 23-CV-80884-ROSENBERG, 2023 U.S. Dist. LEXIS 178891, at *2 (S.D. Fla. Oct. 4, 2023).

**A. WHG SU knowingly received something of value.**

WHG SU knowingly received something of value because it benefited from operation of the hotel, receiving revenue any time a room was rented to a sex trafficker. (ECF No. 1 ¶ 84). In the hotel context, there is a consensus that a plaintiff pleads this element by alleging a defendant received revenue from each room rental.[6] Relying on *Geiss v. The Weinstein Company Holdings, LLC, et al.*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019), WHG SU urges the Court to depart from this consensus. But, by its plain text, §1595(a) only requires that a defendant received a benefit because of its participation in the venture that violated the TVPRA, not from direct participation in a violation. And requiring **knowledge** that a benefit comes from sex trafficking would conflict with the "should have known" language in §1595(a). Thus, courts reject WHG SU's argument as inconsistent with the text and purpose of § 1595 (a). *G.G.,* 76 F.4th at 565 n. 20 (collecting cases).[7]

**B. WHG SU participated in a venture that violated the TVPRA.**

Unlike the plaintiffs in *Doe*, K.R. does not exclusively allege that WHG SU participated in a criminal trafficking venture. Instead, she alleges that WHG SU

---

[6] *See, e.g.*, cases cited *supra* note 3.

[7] WHG SU's reliance on *Does v. Reddit, Inc.*, 51 F.4th 1137, 1145 (9th Cir. 2022) is misplaced because there the Court was not considering a standard § 1595 (a) beneficiary claim. Instead, it was considering what is necessary to state a claim for a violation of § 1591 (a), which has a higher standard. The issue in *Reddit* was what is required to overcome an immunity defense raised by an "interactive computer service" defendant based on Section 230 of the Communications Decency Act pursuant to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA). 51 F.4th at 1141. Some courts have found that, because of FOSTA's language, using that statute to overcome otherwise-applicable Section 230 immunity requires a showing that the defendant violated § 1591(a), which has a knowledge or reckless disregard standard. *Id.* But Section 230 does not apply here, and thus neither does the portion of Reddit that WHG SU repeatedly cites.

participated in a **commercial** venture renting rooms at the hotel—to generate profits —and that **this venture** engaged in violations of the TVPRA through the sex trafficking that occurred at that hotel, including the trafficking of K.R. (*Id.* ¶ 84-85).

A venture under § 1595(a) need not be a criminal venture, and a beneficiary's participation need not be direct participation in trafficking. *M.A.*, 425 F.Supp. 3d at 968-970. Instead, it is only necessary that there was a violation of the TVPRA within the venture's scope and that the beneficiary participated in the **venture** even though it knew or should have known about that TVPRA violation. *Id.* WHG SU participated in a venture covered by § 1595(a) through its role at the Suburban Orlando. This venture formed because WHG SU and Choice: (1) continued renting rooms to traffickers despite having actual or constructive knowledge of the trafficking; and (2) engaged in conduct that created a favorable environment where trafficking occurred. (ECF No. 1 ¶¶ 54, 66). Moreover, WHG SU also facilitated this venture by accommodating traffickers' requests for rooms at the back of the property. (*Id.* ¶ 53).

Contrary to WHG SU's characterization, these allegations go beyond mere **observation** of trafficking activity. Courts in the Eleventh Circuit have concluded that a venture is formed between traffickers and hotel defendants who actively participate in renting rooms to them **after** having the required *mens rea*.[8] Courts around the country agree.[9] A defendant participates in a venture under 1595(a) when

---

[8] *See, e.g.*, *J.G.*, 619 F. Supp. 3d at 1235; *J.C.*, 624 F. Supp. 3d at 1318 n.3; *N.G.*, 2023 U.S. Dist. LEXIS 178891, at *2.

[9] *See, supra,* cases cited at note 3. When a trafficking victim is kept at a hotel property for an extended period of time, this is enough for a continuous business relationship. *See L.H. v. Red Roof Inn, Inc.*, Civil Action No. 3:22-CV-625-CHB, 2023 U.S. Dist. LEXIS 156293, at *31 (W.D.

it continues a commercial relationship once the after it **should know** that the relationship is facilitating trafficking. *G.G.*, 76 F.4th at 559.

WHG SU effectively asks the Court to depart from this consensus and adopt an overt act requirement for § 1595(a) liability. But the "vast majority" of courts considering the issue have declined to import this criminal "overt act" requirement into the civil remedy created by § 1595(a). *G.G.*, 76 F.4th at 559 n.15 (collecting cases) An overt act requirement clashes with the core of beneficiary liability, which makes a defendant who profits, knowingly or negligently, from sex trafficking responsible to victims harmed by that trafficking. WHG SU makes no attempt to explain how the "overt act" requirement that it advocates can be squared with the negligence-based "should have known" standard Congress expressly chose to expand liability under § 1595(a). WHG SU simply ignores this key language, violating the fundamental statutory interpretation tenet that a statute should be construed to give meaning to all terms. *See M.A.*, 425 F. Supp. 3d at 966; *A.B.*, 455 F. Supp. 3d at 180-9.

WHG SU also characterizes K.R.'s allegations as based on a presumption that WHG SU had a freestanding duty to stop trafficking. This argument misstates the law

---

Ky. Sep. 5, 2023). The 12-weeks alleged here is undoubtedly enough to state a claim for a continuous business relationship. The case law from the Middle District of Florida that K.R. cites is distinguishable because the venture alleged by the plaintiffs in those cases were different than and narrower than the ventures K.R. alleges. For example, in *A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641-JES-NPM, 2023 U.S. Dist. LEXIS 32258, at *6 (M.D. Fla. Feb. 27, 2023), the plaintiff alleged only that the defendant "actively participated in this illegal endeavor" but failed to provide supporting allegations. Here, K.R. alleges that WHG SU participated in an ongoing commercial relationship even though it knew or should have known that this commercial relationship (rental of hotel rooms) was facilitating trafficking. *See C.T. v. Red Roof Inns, Inc.*, No. 2:22-cv-834-JES-KCD, 2023 U.S. Dist. LEXIS 87727, at *9 (M.D. Fla. Mar. 11, 2023) (recognizing this distinction).

and the nature of K.R.'s claim. K.R. relies on the specific cause of action that Congress created in § 1595(a), under which WHG SU had a duty to stop **profiting** by **facilitating** what it **should have known** was trafficking. K.R. does not just allege that WHG SU **observed** trafficking. Instead, her allegations have at their foundation WHG SU's affirmative actions: receiving a benefit, renting rooms, and affirmatively creating a favorable venue for trafficking. While K.R. **does** allege WHG SU had the opportunity to stop her trafficking at its hotels, this is just a way to frame the allegations that WHG SU **knowingly or negligently furnished** a venue for her trafficking. Courts recognize this distinction:

> Rather than reading her claims as seeking to impose a duty to prevent trafficking, we read A.B.'s amended complaint as seeking the civil remedy Congress gave victims of sex trafficking against "whoever knowingly benefits" from participation in a venture the person "knew or should have known engaged" in a violation of the Act.

*A.B.*, 455 F. Supp. 3d at 182.

Under WHG SU's view, it could continue to benefit from providing a venue for sex trafficking with impunity because operation of the hotel was not affirmative participation in trafficking. But this argument collapses the distinction between beneficiary liability under § 1595(a) and criminal liability under § 1591(a). *See, e.g., S.Y. v. Naples Hotel Co.,* 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020). Section 1595(a) requires affirmative **participation** in a non-criminal **venture** but **not** involvement in trafficking. *See A.D. v. Wyndham Hotels & Resorts, Inc.*, No. 4:19cv120, 2020 U.S. Dist. LEXIS 250759, at *8 (E.D. Va. July 22, 2020). Indeed, the justification for applying beneficiary liability to a hotel defendant is particularly strong because a

trafficker's use of a hotel is not happenstance; hotels are the primary place where trafficking occurs. A secure venue—with easy access, minimal interference, and a low risk of traceability—is a crucial tool for a trafficker. Moreover, the illegal activity is happening on site at the hotel. This is a far cry from, for example, selling a trafficker a sandwich or gas. *A.B.* 455 F. Supp. 3d at 182.

### C. WHG SU's had actual or constructive knowledge that the ventures it participated in were violating the TVPRA.

#### 1. WHG SU relies on an unduly narrow understanding of mens rea.

WHG SU's arguments rest on an unduly narrow interpretation of the *mens rea* element in § 1595(a). WHG SU reads in a plaintiff-specific knowledge requirement that conflicts with statutory text and purpose. The object of the *mens rea* element is not a victim but a "venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. 18 U.S.C. § 1595(a) The atextual victim-specific-knowledge requirement that WHG SU advocates has untenable policy implications. Under WHG SU's view, even companies that knowingly benefited from facilitating widespread trafficking could immunize themselves by ensuring they did not learn details about individual victims.[10] A recent decision from the Southern District of New York recognized this, distinguishing between victim and venture knowledge, and holding that § 1595(a) requires only the latter. See *Doe v. Deutsche Bank Aktiengesellschaft*, No. 22-cv-

---

[10] *See G.G.*, 76 F.4th at 557.

10018 (JSR), 2023 U.S. Dist. LEXIS 75503, at *30 (S.D.N.Y. 2023); *see also G.G.*, 76 F.4th at 558; *Burrell v. Staff*, 60 F.4th 25, 39 (3d Cir. 2023).

**Second**, WHG SU's argument disregards Congress's decision to impose liability based on constructive knowledge. By using "should have known," Congress invoked ordinary-negligence principles. *See M.A.*, 425 F. Supp. 3d at 966. This standard "implies that the actor owes another the duty of ascertaining the fact in question. . . . and that he would ascertain the existence thereof in the proper performance of that duty." Restatement (Second) of Torts § 12 cmt. a. WHG SU's argument fails to account for its duty to use ordinary care to ascertain information.

2. *WHG SU had actual or constructive knowledge*.

The *mens rea* element is satisfied because WHG SU knew or should have known that its ventures at the Suburban Orlando were facilitating sex trafficking. The first link in the chain supporting this inference is WHG SU's actual knowledge of sex trafficking in the hotel industry, and its awareness of how hotels can detect trafficking and stop facilitating it. (*Id.* ¶ 37-40). This general knowledge is relevant because it—along with the other allegations—shapes what WHG SU knew or **should have known** based on the obvious signs of trafficking at its hotel.

K.R. further alleges that WHG SU knew or should have known about the widespread sex trafficking at the Suburban Orlando based on its on-site role operating the hotel, including through the hotel staff it employed, and based on online review and customer complaints. (*Id.* ¶¶ 50-54, 32, 55, 84). What a defendant knew (which is information within a defendant's control) can be pled

generally and supported by alleging circumstantial evidence of knowledge. *See, e.g.*, *S.Y.*, 476 F. Supp. 3d at 1251. K.R. is entitled to have reasonable inferences drawn in her favor, and her allegations support a reasonable inference that WHG SU knew or should have known about ongoing trafficking activity at the Suburban Orlando. *See J.M.*, 2023 U.S. Dist. LEXIS 84861, at *6-7 (plaintiff plausibly pled knowledge by identifying channels franchisor used to collect information).

K.R. also adequately pleads a basis for imputing constructive knowledge to WHG SU. (ECF No. 1 ¶ 63-67). If WHG SU did facilitate trafficking unknowingly at the Suburban Orlando, then its lack of knowledge was due to its failure to exercise ordinary diligence. Because the trafficking resulted from its failure to exercise ordinary diligence, WHG SU is charged with constructive knowledge of that trafficking.[11] These allegations support an inference of *mens rea* at the venture level: operation of the Suburban Orlando.

Even if the Court reads § 1595(a) to require that WHG SU knew or should have known about the trafficking of K.R. specifically, the allegations here still overcome 12(b)(6). During the 12 weeks she was trafficked at the hotel, there were **many** obvious signs of K.R.'s trafficking consistent with well-known "red flags" of trafficking in a hotel environment. (*Id.* ¶¶ 25-26, 35, 58). Moreover, K.R. specifically identifies an incident where hotel staff directly observed the immediate aftermath of

---

[11] *M.A.*, 425 F. Supp. 3d at 968; *A.W.*, 2022 U.S. Dist. LEXIS 227437 at * 21 ("[G]eneral knowledge and failure to act constitute constructive knowledge and meet the plausibility standard required to state a claim for negligence under the TVPRA's beneficiary theory").

sexual violence she experienced at the hotel. (*Id.* ¶ 28). There were also actions taken by and comments made by hotel staff that support an inference that they knew about K.R.'s trafficking. (*Id.* ¶¶ 26-27). Determining what a reasonable hotel observer "should have known" under these circumstances requires assessing ordinary diligence, a fact issue that cannot be determined under 12(b)(6).

WHG SU argues that K.R. has pleaded only that it had notice that she experienced physical violence connected with commercial sex activity[12] and that this is not enough to state a claim that it knew or should have known she was being trafficked. This fact-dispute-laden argument ignores the well-established principle that the Court must credit K.R.'s allegations and draw reasonable inferences in her favor.  WHG SU cites **no** authority supporting its argument that a hotel defendant who observes multiple signs specifically known as red flags of sex trafficking— including a specific incidence of sex-related violence and physical indica of ongoing violence such as visible bruises—does not have actual or constructive knowledge of the victim's trafficking. Courts have routinely found similar or less robust allegations sufficient to satisfy the *mens rea* element at the 12(b)(6) stage.[13]

---

[12] There is, of course, overlap between the signs of commercial sex generally and signs of trafficking: the definition of trafficking incorporates the definition of commercial sex. 18 U.S.C. § 1591(a). A large portion of commercial sex involves trafficking. Prostitution is the "front door" to sexual slavery, and "[s]exually exploited persons typically enter the illicit sex trade as minors, are frequently coerced or forced to engage in prostitution by pimps or traffickers, and are frequent victims of violent crime committed by pimps, traffickers, and sex buyers." *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, available at: https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf Thus, signs of commercial sex, which is itself illegal, **are key signs** of trafficking, and WHG SU knew or should have known this.
[13]  *See, e.g.*, L.H., 2023 U.S. Dist. LEXIS 156293, at *34; *C.T. v. Red Roof Inns, Inc.*, No. 2:22-cv-834-JES-KCD, 2023 U.S. Dist. LEXIS 87727, at *13 (M.D. Fla. Mar. 11, 2023) (collecting cases).

At a minimum, K.R.'s allegations support an inference that ordinary diligence required WHG SU to take additional steps to assess whether it was facilitating trafficking at the hotel, and there is a **fact question** about whether **ordinary diligence** by WHG SU would have prevented it from continuing to profit from K.R.'s trafficking. If WHG SU intends to argue it had an interest in generating revenue from (illegal) commercial sex in its hotels (even when associated with physical violence) such that it was reasonable for it to ignore recognized "red flags" of trafficking, then it can make those arguments to the jury. They do not justify 12(b)(6) dismissal.

## II.  K.R. states a perpetrator claim against WHG SU.

The allegations that K.R. makes are also enough to state a perpetrator claim against WHG SG based on its violations of 1591. K.R. alleges that WHG SU had actual knowledge of trafficking at the hotel or were willfully blind to this trafficking, including K.R.'s trafficking, and yet continued facilitating that activity by providing a venue where it could continue uninterrupted and taking other steps that affirmatively facilitated this trafficking, including accommodating specific requests of traffickers. (ECF No. 1 ¶ 53). This constitutes harboring under § 1591(a)(1) and knowing facilitation of a trafficking venture under § 1591(a)(2) consistent with a criminal violation. *Cf. United States v. Bhimani*, No. 3:17-324, 2021 U.S. Dist. LEXIS 215789, at *25 (M.D. Pa. 2021) (upholding corporations TVRPA's conviction where hotel rented rooms to pimps); *J.M.*, 2023 U.S. Dist. LEXIS 84861 at *6-*7 recognizing § 1591 claim against hotel franchisor).

### III.    WHG SU is responsible for the acts of its employees.

WHG SU argues that it cannot be held responsible for the acts and omissions of the hotel staff it employed. But it cites no relevant authority for this proposition, which is contrary to **all** TVPRA case law, including the cases in WHG SU's brief. The acts, omissions, and knowledge of the hotel staff are attributable to WHG SG.

### IV.    K.R.'s claims are not time barred.

"A Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred because a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint." *Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013). Claims under § 1595(a) are subject to a 10-year limitations period from the time "the cause of action arose." 18 U.S.C. § 1595(c). K.R. was subjected to continuous trafficking for a period that included March 2013 and May 2013. She filed this lawsuit in May 2023.  The pleadings do not show, as a matter of law, that K.R.'s claims are time barred.

**First**, under the continuing tort doctrine, no portion of K.R.'s claims against WHG SU could accrue before her continuous trafficking at the Suburban Orlando ended. Under the continuing tort doctrine, a cause of action arising from a continuing course of a conduct does not accrue before the last tortious act has been committed. *J.M.*, 2022 U.S. Dist. LEXIS 190054, at *16. In a TVPRA case, this means it does not accrue while the trafficking is ongoing. *Id.*; *Sahebdin v. Khelawan*, No. 21-CV-2956 (MKB), 2022 U.S. Dist. LEXIS 172964, at *13 (E.D.N.Y. Sep. 24, 2022) (cause of action in labor-trafficking case did not accrue

while trafficking was ongoing). K.R. alleges that her trafficking extended through May 2013. Thus, the face of the pleading does not show that the cause of action for K.R.'s entire trafficking period accrued more than 10 years before May 31, 2013.

WHG SU's attempt to rely on court documents showing that a trafficker involved in K.R.'s trafficking was arrested on May 29, 2013, does not change the result. The Court should reject this fact-bound argument, which is improper at the 12(b)(6) stage. The fact that an individual who was involved in K.R.'s trafficking was arrested does not demonstrate, as a matter of law, that K.R.'s trafficking at Defendants' hotel ended more than 10 years before May 31, 2023.

Dismissal based on the statute of limitations is also inappropriate because the pleadings raise an issue about whether K.R.'s claims are timely under the discovery rule. Under the discovery rule, a claim does not accrue until a plaintiff discovers, or with reasonable diligence should have discovered, both her injury **and** its cause.

At the time of her trafficking, K.R. was a teenager who was forcibly drugged, physically abused, psychologically manipulated, and cut off from her loved ones. (ECF No. 1 ¶ 23). Her freedom, including her ability to pursue her legal rights, was severely restricted. (*Id.*) Accordingly, she was not in a position where she could have, with reasonable diligence, discovered the legal cause of her injuries during or immediately after her trafficking period. Thus, the pleadings do not show that K.R.'s claim accrued more than 10 years before she filed this lawsuit on May 31, 2023.

Moreover, pleadings show a possible basis for the equitable tolling of K.R.'s claim.[14] This doctrine justifies tolling the limitations period when: (1) the plaintiff has been pursuing her rights diligently; but (2) some extraordinary circumstances stood in the way of filing suit. *See Hongxia Wang v. Enlander*, 2018 U.S. Dist. LEXIS 37910, at *11 (S.D.N.Y. Mar. 6, 2018). It tolls the statute of limitations for the period when these circumstances existed. *Id.* The abuse, manipulation, and control involved in sex trafficking presents the kind of extraordinary circumstances that warrants application of this doctrine.  This prevents resolution of the limitations issue at the 12(b)(6) stage.[15]

## V.    K.R.'s complaint is not an impermissible shotgun pleading.

The Complaint is not an improper shotgun pleading because it gives WHG SU adequate notice of claims against it. This case involves a single unified set of facts that K.R. alleges result in two forms of liability for WHG SU under a single source of law: the TVPRA. K.R. alleges WHG SU's conduct supports beneficiary liability under § 1595 and perpetrator liability under § 1591. The differences between § 1591 and § 1595 liability are: (1) the level of *mens rea* required; and (2) the definition of participation. K.R. alleges that the same conduct by WHG SU meets the standards for **both** provisions. Requiring WHG SU to restate the same

---

[14]  Federal statutes are customarily subject to equitable tolling. *Fedance v. Harris*, 1 F.4th 1278, 1284 (11th Cir. 2021). "When plaintiffs raise an equitable tolling argument, a court must deny a motion to dismiss based on the limitations period unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled."  *S. African Apartheid Litig. v. Daimler AG*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) (internal quotations omitted).

[15] *Cf. S. Y. v. Wyndham Hotels & Resorts, Inc.,* 519 F. Supp. 3d 1069, 1090 (M.D. Fla. 2021) (denying 12(b)(6) motion on statute of limitations based, in part, on possible equitable tolling).

factual allegations for each form of liability would result only in duplication and would not serve the goal of providing fair notice. The remainder of WHG SU's motion undermines any claim that it lacks fair notice of K.R.'s claims against it.

## **CONCLUSION**

K.R. respectfully requests that the Court deny WHG SU's Motion to Dismiss in its entirety. In the alternative, K.R. requests leave to file an amended complaint.

Respectfully submitted this 18th day of October 2023.

> **PROVOST★UMPHREY LAW FIRM, L.L.P.**
> 350 Pine Street, Suite 1100
> P. O. Box 4905
> Beaumont, Texas 77704
> (409) 835-6000
> (409) 813-8605 (FAX)
>
>
> By:_____
> SEAN C. VILLERY-SAMUEL (*pro hac vice*)
> Texas State Bar No. 24070802
> svillery-samuel@pulf.com
> JAMES E. PAYNE (*pro hac vice*)
> Texas State Bar No. 00788171
> jpayne@pulf.com
> Bryan Blevins, Jr. (*pro hac vice*)
> Texas State Bar No. 02487300
> bblevins@pulf.com
>
> Annie McAdams (*pro hac vice*)
> Texas State Bar No. 24051014
> **ANNIE McADAMS, PC**
> 2200 Post Oak Blvd.
> Suite 1000 PHC Tower, 10th Floor
> Houston, Texas 77056
> (713) 785.6262
> (866) 713-6141 (FAX)
> teamamc@mcadamspc.com

Faudlin Pierre
**PIERRE SIMON**
Florida Bar No. 56770
600 Southwest 4th Avenue
Fort Lauderdale, FL 33315
(305) 336-9193
fplaw08@yahoo.com

***ATTORNEYS FOR PLAINTIFF***

<u>**CERTIFICATE OF COMPLIANCE**</u>

Counsel hereby certifies that this document has been prepared with one of

the font and point selections approved by the Court pursuant to L.R. 1.08 of the

Middle District of Florida, specifically, 13 point, Georgia font.

This the 18th day of October 2023.

**PROVOST★UMPHREY LAW FIRM, L.L.P.**
350 Pine Street, Suite 1100
P. O. Box 4905
Beaumont, Texas 77704
(409) 835-6000
(409) 813-8605 (FAX)

By: _____
    SEAN C. VILLERY-SAMUEL (*pro hac vice*)
    Texas State Bar No. 24070802
    svillery-samuel@pulf.com
    JAMES E. PAYNE (*pro hac vice*)
    Texas State Bar No. 00788171
    jpayne@pulf.com
    Bryan Blevins, Jr. (*pro hac vice*)
    Texas State Bar No. 02487300
    bblevins@pulf.com

Annie McAdams (*pro hac vice*)
Texas State Bar No. 24051014
**ANNIE McADAMS, PC**
2200 Post Oak Blvd.
Suite 1000 PHC Tower, 10th Floor
Houston, Texas 77056
(713) 785.6262
(866) 713-6141 (FAX)
teamamc@mcadamspc.com

Faudlin Pierre
**PIERRE SIMON**
Florida Bar No. 56770
600 Southwest 4th Avenue
Fort Lauderdale, FL 33315
(305) 336-9193
fplaw08@yahoo.com

### *ATTORNEYS FOR PLAINTIFF*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this 18th day of October 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/EFC system, which will send e-mail notification of such filing to all attorneys of record.

By:_____

SEAN C. VILLERY-SAMUEL (*pro hac vice*)