UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JANE DOE K.R.,

      Plaintiff,

v.                                                                    Case No: 6:23-cv-1012-JSS-LHP

CHOICE HOTELS, WHG SU
DELEGATES, LLC, CHOICE
HOTELS INTERNATIONAL, INC.
and CHOICE HOTELS
INTERNATIONAL SERVICES
CORP.,

      Defendants.
_____/

## ORDER

Plaintiff brings this action for relief under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1581, *et seq.*, against Defendants WHG SU Delegates, LLC (WHG SU), Choice Hotels International, Inc., and Choice Hotels International Services Corp. (together with Choice Hotels International, Inc, Choice Hotels). (Dkt. 1.) WHG SU and Choice Hotels move to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and Choice Hotels alternatively moves to strike certain of Plaintiff's allegations pursuant to Federal Rule of Civil Procedure 12(f). (Motions, Dkts. 39, 45.) Plaintiff opposes Defendants' Motions. (Dkts. 50, 51.) Upon consideration and for the reasons stated below, Defendants' Motions are denied.

**BACKGROUND**

According to Plaintiff's Complaint, for approximately 12 weeks between March and May 2013, Plaintiff was a victim of sex trafficking at the Suburban Extended Stay (Suburban Orlando), a hotel in Orlando, Florida. (Dkt. 1 ¶¶ 29–30.) At all times relevant to the Complaint, the Suburban Orlando was owned and operated by WHG SU and was branded by Choice Hotels as the franchisor. (*Id.* ¶ 31.)

Plaintiff alleges that she was forced into human trafficking by an individual named Quantae Veals, who forced Plaintiff to have sex with various "johns" for profit at the Suburban Orlando. (*Id.* ¶ 23.) Plaintiff was 18 years old. (*Id.* ¶ 25.) According to Plaintiff, her sexual exploitation "occurred repeatedly in rooms of the Suburban Orlando" and it was "patently obvious" to the hotel's staff that she was a victim of human trafficking. *E.g.*, (*id.* ¶¶ 27, 30.) Plaintiff alleges that Defendants, as the owner and operator and franchisor, were aware that sex trafficking was occurring at the Suburban Orlando because of their monitoring of online reviews of the hotel and surveillance footage and inspections of hotel property, and that "traffickers, including [Plaintiff's] trafficker, operated with little regard for concealment due to an implicit understanding between the hotel staff of the Suburban Orlando and the traffickers." (*Id.* ¶¶ 50–55.) According to Plaintiff, both she and her trafficker exhibited "obvious and apparent signs of trafficking," including in interactions with the front desk staff and in the common areas of the hotel and that "[m]ultiple employees at the Suburban Orlando, including management level employees, observed and/or were made aware of these obvious signs of trafficking while acting within the scope and course of their

employment." (*Id.* ¶¶ 56–62.)  Plaintiff alleges that Defendants, as the owner and operator and franchisor of the Suburban Orlando, had the duty and opportunity to stop her trafficking, but instead facilitated it by ignoring the open and obvious signs that she was a victim, continuing to provide rooms and amenities to her traffickers, and taking no steps to stop human trafficking at the Suburban Orlando.  (*Id.* ¶¶ 63–78.)

Plaintiff's Complaint asserts three causes of action.  In her first cause of action, Plaintiff asserts a perpetrator claim against WHG SU pursuant to §§ 1591(a)(1) and 1595(a) of the TVPRA and alleges that WHG SU "harbored [Plaintiff] by renting a room to [Plaintiff's] trafficker and providing him with services despite knowing or in reckless disregard of the fact" that she was a victim of human trafficking.  (Dkt. 1 ¶¶ 87–91.)  Plaintiff's second cause of action asserts that Defendants are liable as beneficiaries of a human trafficking venture in violation of § 1595(a) of the TVPRA, in that they "received a financial benefit from participating in a venture with traffickers, including [Plaintiff's] traffickers, despite the fact that [Defendants] each knew or should have known that these traffickers were engaged in violations of [the TVPRA]."  (Dkt. 1 ¶¶ 92–96.)  Plaintiff's third cause of action asserts a vicarious liability claim against Choice Hotels under a theory of actual agency for the conduct of WHG SU in facilitating the human trafficking of Plaintiff.  (*Id.* ¶¶ 97–101.)

## APPLICABLE STANDARDS

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction," "a short and plain

statement of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought."   Fed. R. Civ. P. 8(a).   Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may seek to dismiss a complaint that fails to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).   When ruling on a Rule 12(b)(6) motion to dismiss, the court must accept the complaint's well-pleaded factual allegations as true and construe them in the light most favorable to the plaintiff. *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (citing *Adinolfe v. United Techs. Corp.,* 768 F.3d 1161, 1169 (11th Cir. 2014)).

To state a claim sufficient to survive a motion to dismiss, a pleading must allege facts that reasonably demonstrate evidence exists to support the plaintiff's claims. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).   "Rule 8's pleading standard 'does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'"   *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). To survive dismissal, a litigant may not solely put forth "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."   *Iqbal*, 556 U.S. at 678.   Instead, the plaintiff's allegations "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Id.* (quoting *Twombly*, 550 U.S. at 570).   "A complaint is plausible on its face when it contains sufficient facts to support a reasonable inference that the defendant is liable for the misconduct alleged."   *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018) (quoting

*Iqbal*, 556 U.S. at 678).   Factual allegations that are "'merely consistent with' a defendant's liability,' however, are not facially plausible."  *Urquilla-Diaz*, 780 F.3d at 1051 (quoting *Iqbal*, 556 U.S. at 678).

## ANALYSIS

Defendants raise various arguments in their Motions to Dismiss, including that Plaintiff is not a victim of human trafficking under the TVPRA, that Plaintiff's claims are barred by the TVPRA's 10-year statute of limitations, that Plaintiff's Complaint fails to state a claim on each cause of action, and that the Complaint is otherwise an impermissible shotgun pleading.  (Dkts. 39, 45.)  The court addresses each argument below.

### A. Plaintiff's Status as a Victim of Human Trafficking

The TVPRA provides a civil cause of action to "[a]n individual who is a victim of a violation of" the TVPRA.  18 U.S.C. §1595(a).  Choice Hotels argues that Plaintiff has failed to plead that she was a "victim" under the TVPRA because she fails to plausibly allege that her trafficking was due to force, fraud, or coercion.  (Dkt. 45 at 9–10.)  The court disagrees.  A "victim" is defined in the TVPRA as "the individual harmed as a result of a crime under this chapter[.]"  18 U.S.C. § 1593(c) (defining victim for purposes of mandatory restitution)[1]; *see also United States v. Robinson*, 508 F. App'x 867, 870 (11th Cir. 2013).  For a sex trafficking offense to be committed against

---

[1] Ordinarily, the court "presume[s] that Congress intends phrases in the same statute to mean the same thing[.]"  *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021) (citing *Law v. Siegel*, 571 U.S. 415, 422 (2014)).

an adult under § 1591, the offense must be "effected by means of force, threats of force, fraud, or coercion."  18 U.S.C. § 1591(b)(1); *see United States v. Walker*, 73 F.4th 915, 928 (11th Cir. 2023).  Here, Plaintiff alleges that she was "drugged and forced into human trafficking" and "[u]nder the constant threat of terror . . . [was] forced and kept . . . in the bondage of human trafficking by [her trafficker's] drugging her, physically assaulting her, deviously professing his love for her, and by not allowing her to go anywhere without him."  (Dkt. 1 ¶¶ 22–23.)  Accepting the well-pleaded factual allegations as true, Plaintiff has adequately alleged that she was a victim of human trafficking through "force, threats of force, fraud, or coercion" sufficient to bring a cause of action under § 1595(a).  *See* 18 U.S.C. § 1591(b)(1); *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, No. 5:23-cv-235-FL, 2024 WL 631482, at *4 (E.D.N.C. Feb. 13, 2024) (collecting cases in which courts "have upheld TVPRA claims [noting] the presence of non-conclusory allegations of some form of violence or fraud").

### B.  Statute of Limitations

Defendants each argue that Plaintiffs' claims must be dismissed because they are barred by the TVPRA's statute of limitations.  (Dkt. 39 at 6–7; Dkt. 45 at 8–9.) Under the TVPRA, no civil action "may be maintained . . . unless it is commenced not later than . . . 10 years after the cause of action arose[.]"  18 U.S.C. § 1595(c). Plaintiff filed her Complaint in this matter on May 31, 2023, and Defendants therefore argue that any of Plaintiff's claims based on conduct before May 31, 2013 must be dismissed as untimely.  (Dkt. 39 at 6–7; Dkt. 45 at 8–9.)  Upon consideration, the court disagrees and declines to dismiss Plaintiff's claims on this basis.

In support of their arguments, Defendants seek to introduce the criminal docket of a case from the Eastern District of Missouri involving an individual named Quantae Veales,[2] who Defendants argue is Plaintiff's alleged trafficker and was in police custody as of May 29, 2013. (Dkts. 39-1, 45-1.) Thus, according to Defendants, none of Plaintiff's alleged trafficking could have occurred prior to the statute of limitations lapsing and her Complaint must be dismissed in its entirety. (Dkt. 39 at 6–7; Dkt. 45 at 8–9.) "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see also Roberts v. Carnival Corp.*, 824 F. App'x 825, 826 (11th Cir. 2020) (citing *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)). "[A] document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, we may also consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity."). "A document is central to a complaint when it is a 'necessary part of [the plaintiff's] effort to make out a claim." *Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 870 (11th Cir. 2019) (citing *Day*, 400 F.3d at 1276). Here,

---

[2] Plaintiff's Complaint spells the alleged trafficker's surname as "Veals." (Dkt. 1 ¶ 23.)

although Plaintiff references Veals in the Complaint, the arrest and criminal prosecution of her alleged trafficker is not central to Plaintiff's claims against Defendants under the TVPRA, nor is that prosecution a necessary part of Plaintiff's effort to plead those claims. *See Day*, 400 F.3d at 1276. Accordingly, the court will not consider the criminal docket sheet in addressing Defendant's Motions to Dismiss.

Defendants further argue that because Plaintiff filed her Complaint on May 31, 2023, any claims arising from conduct that occurred prior to May 31, 2013 are time-barred and must be excluded. (Dkt. 39 at 6–7; Dkt. 45 at 8–9.) Plaintiff argues in response that her claims are not time-barred under the continuing tort doctrine, that her allegations are timely under the discovery rule, and that the statute of limitations should be equitably tolled in this case. (Dkt. 50 at 18–20; Dkt. 51 at 18–20.)

"'A statute of limitations bar is an affirmative defense,' and a plaintiff is 'not required to negate an affirmative defense in [its] complaint.'" *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Indeed, "[a] complaint need not anticipate and negate affirmative defenses and should not ordinarily be dismissed based on an affirmative defense unless the defense is apparent on the face of the complaint." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1304 (11th Cir. 2020) (citing *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011)). Thus, "dismissal on statute-of-limitations grounds is proper only where it is apparent from the face of the complaint that the claim is time-barred." *Wainberg*, 93 F.4th at 1224 (quotation omitted).

In considering claims under the TVPRA, some courts have applied the 10-year statute of limitations to bar claims based on conduct that occurred more than 10 years prior to filing the complaint. *See, e.g.*, *K.A. v. 26th St. Hosp., LLP d/b/a Mainstay Suites Williston*, No. 1:23-cv-092, 2024 WL 2112480, at *8 (D.N.D. Apr. 15, 2024) (finding time-barred sex trafficking claims based on conduct that occurred more than 10 years prior to filing of complaint where plaintiff did not address defendant's statute of limitations argument in her response to motion to dismiss); *H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020) ("H.G. may only pursue claims for alleged violations of the TVPRA that occurred after December 9, 2009 (ten years prior to the filing of her initial Complaint).").  However, other courts have declined to bar such claims at the pleading stage and found that the continuing tort doctrine or equitable tolling could apply based on the plaintiff's well-pleaded allegations to toll the TVPRA's statute of limitations.  *See, e.g.*, *Schneider v. OSG, LLC*, No. 22-CV-7686 (AMD) (VMS), 2024 WL 1308690, at *5 (E.D.N.Y. Mar. 27, 2024) ("Courts have held that the [TVPRA] involves a continuing tort, and that a single act occurring within the limitations period will preserve a claim based on all acts that were part of a single pattern.") (collecting cases); *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2022 WL 10626493, at *6 (E.D. Cal. Oct. 18, 2022) (applying continuing tort doctrine to deny motion to dismiss TVPRA claims); *Hongxia Wang v. Enlander*, No. 17 CIV. 4932 (LGS), 2018 WL 1276854, at *4 (S.D.N.Y. Mar. 6, 2018) ("At the pleading stage, however, dismissal of the § 1589 and § 1590 claims is not warranted

because it is not clear from the face of the Complaint that equitable tolling does not apply.") (citing *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 800 (2d Cir. 2014)).

Based on the facts alleged in the Complaint that she was subjected to continued human trafficking at the Suburban Orlando from March to May 2013, a time period that could include acts within the applicable statute of limitations, the court declines to dismiss Plaintiff's claims at this stage. Under the continuing tort doctrine or equitable tolling, Plaintiff has sufficiently pleaded facts to survive dismissal at this stage based on Defendants' statute of limitations defense. *See Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1236 (M.D. Fla. 2023) ("When the continuing tort doctrine applies, 'the cause of action accrues when the tortious conduct ceases[,]' . . . the statute of limitations will not bar the entire claim, and 'a plaintiff may recover damages for tortious acts committed within the limitations period prior to the filing of suit.'") (citations omitted); *Jackson v. Sec'y, Dep't of Corr.*, No. 8:19-cv-3152-T-33AAS, 2020 WL 2523310, at *2 (M.D. Fla. May 18, 2020) ("The applicability of equitable tolling depends on a case's particular facts and circumstances" and may be appropriate where the plaintiff "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing.") (quoting *Holland v. Florida*, 560 U.S. 631, 645, 649–50 (2010)). Moreover, Plaintiff is not required to negate an affirmative defense in her Complaint. *See Isaiah*, 960 F.3d at 1304; *A. D. v. Best W. Int'l, Inc.*, No. 2:22-cv-650-JES-NPM, 2023 WL 2955711, at *4 (M.D. Fla. Apr. 14, 2023) ("[T]here is no legal support for the notion that a complaint must be dismissed if it fails to negate a potential statute of limitations affirmative

defense on its face."). Accordingly, Defendants' Motions are denied to the extent they seek dismissal based on the statute of limitations.

### C. Perpetrator Claim against Owner and Operator WHG SU

In her first cause of action, Plaintiff alleges that WHG SU is liable as a perpetrator of human trafficking in violation of 18 U.S.C. §§ 1591(a) and 1595(a). (Dkt. 1 ¶¶ 87–91.)  WHG SU argues that Plaintiff's perpetrator claim must be dismissed because she has not alleged that WHG SU had "actual knowledge that Veales was allegedly trafficking Plaintiff," her allegations fail to establish that WHG SU "harbored" her under the statute, and she fails to establish that WHG SU "actually knew it was assisting Veales when he allegedly trafficked Plaintiff." (Dkt. 39 at 19–20.)  Plaintiff responds that she has adequately stated a claim for perpetrator liability under the TVPRA. (Dkt. 50 at 17.)  The court agrees with Plaintiff.

The TVPRA provides that "[a]n individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator[.]"  18 U.S.C. § 1595(a).  A perpetrator under § 1595(a) is "someone who has violated the criminal statute." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 724 (11th Cir. 2021).  To establish her claim, Plaintiff must therefore allege sufficient facts that WHG violated 18 U.S.C. § 1591(a). *See B.J. v. G6 Hosp., LLC*, No. 22-CV-03765-MMC, 2023 WL 6120682, at *11 (N.D. Cal. Sept. 18, 2023) ("'Civil perpetrator' liability under § 1595 adopts § 1591's 'elements for criminal liability.'") (quoting *J.M. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-00672-KJM-JDP, 2023 WL 3456619, at *2 (E.D. Cal. May 15, 2023).

Section 1591(a) criminalizes the actions of anyone who knowingly:

> (1)  recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2)  benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act[.]

18 U.S.C. § 1591(a). Thus, to state a § 1595 claim for perpetrator liability pursuant to § 1591(a), a plaintiff must allege that the defendant knowingly "(1) recruited, enticed, harbored, transported, provided, obtained, or maintained [her]; (2) knowing that force, threats of force, coercion, or any combination of such means would be used; (3) to cause [her] to engage in a commercial sex act." *Doe #1 v. Crowley Mar. Corp.*, No. 3:23-cv-383-MMH-JBT, 2024 WL 1346947, at *7 (M.D. Fla. Mar. 29, 2024) (quoting *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *7 (6th Cir. Jan. 27, 2022)); *see also Acevedo v. eXp Realty, LLC*, No. 2:23-cv-01304-AB-AGR, 2024 WL 650189, at *9 (C.D. Cal. Jan. 29, 2024)).

Unlike a beneficiary claim brought under § 1595, to establish that a defendant is a perpetrator in violation § 1591(a), the plaintiff must show that the defendant had actual knowledge of the sex trafficking at issue. *See Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136, 1155 (N.D. Ala. 2022) ("This distinction is crucial because, while sections 1591 and 1595 both include provisions for beneficiary liability, the criminal statute requires that the defendant have actual knowledge of sex trafficking at issue while the civil statute allows a plaintiff to plead that the defendant merely had

constructive knowledge."); *A.D., v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-cv-120, 2020 WL 8674205, at *2 n.1 (E.D. Va. July 22, 2020) ("Section 1591 imposes an actual knowledge requirement on participation for criminal liability for both perpetrators and beneficiary perpetrators."). "'Knowledge' is '[a]n awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact.'" *Doe #1*, 21 F.4th at 723–24 (quoting *Knowledge*, Black's Law Dictionary (11th ed. 2019)). Under Federal Rule of Civil Procedure 9(b), "knowledge . . . may be alleged generally."

Drawing all reasonable inferences in favor of Plaintiff, Plaintiff has sufficiently alleged that WHG SU knowingly harbored Plaintiff with actual knowledge or reckless disregard of the fact that force, threats of force, or coercion would be used to force Plaintiff to engage in commercial sex acts. 18 U.S.C. § 1591(a). Initially, WHG SU argues that the TVPRA does not impose vicarious liability on an employer for the actions of its employees, however it fails to cite any cases restricting such liability in the context of the TVPRA. (Dkt. 39 at 16–17.) Rather, "[w]hile the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability." *Treminio*, 649 F. Supp. 3d at 1232 (collecting cases and declining to dismiss TVPRA claim against corporation for violative acts of its employees) (citing *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003) ("[T]he Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.")). Plaintiff alleges

that "[m]ultiple employees at the Suburban Orlando, including management level employees, observed and/or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment" and that they acted in furtherance of WHG SU's interests by continuing to rent rooms to Plaintiff's traffickers for its financial benefit. *E.g.*, (Dkt. 1 ¶¶ 62, 84.) The court will therefore consider the actions and knowledge of the Suburban Orlando's hotel staff taken within the course of their employment for its benefit as imputed to WHG SU. *See Treminio*, 649 F. Supp. 3d at 1232 ("Based on these allegations about [employees'] conduct, the Court finds that [plaintiff's] allegations, taken as true, raise a reasonably plausible inference that [employer] knew or acted in reckless disregard of the fact that [employee] would use force to cause [plaintiff] to engage in a commercial sex act.") (citing *United States v. Townsend*, 521 F. App'x 904, 907 (11th Cir. 2013)); *cf. Doe v. Willis*, No. 8:21-cv-1576-VMC-CPT, 2023 WL 2799747, at *9 (M.D. Fla. Apr. 5, 2023) (Under Florida law, "an employer generally cannot be held liable for the tortious or criminal act of an employee, unless the act was committed during the course of employment to further a purpose or interest of the employer.") (citing *Doe v. St. John's Episcopal Par. Day Sch., Inc.*, 997 F. Supp. 2d 1279, 1287–88 (M.D. Fla. 2014)).

In her Complaint, Plaintiff alleges that "[b]ecause it was known among the community of traffickers that staff at the Suburban Orlando turned a blind eye to sex trafficking, [Plaintiff's] trafficker made little or no effort to disguise his role or his actions." (Dkt. 1 ¶ 57.) WHG SU's actual knowledge may be sufficiently inferred from the numerous signs exhibited by Plaintiff and her trafficker that she was a victim

of human trafficking, including that Plaintiff did not have access to her identification card; the rooms were paid for in cash and upon request were located at the back of the property, were not adjoining, or were in areas known to be used for drugs, trafficking, and prostitution; and that the rooms would be booked for an extended period on a day-to-day basis and neither Plaintiff nor her trafficker would carry luggage.  (*Id.* ¶ 58.) Staff members, including management level employees, also had numerous interactions with Plaintiff in the hotel's common areas, in which they observed Plaintiff's physical and mental deterioration, including malnourishment, visible bruising, and obvious signs of fear anxiety, disorientation, and impairment; Plaintiff's inappropriate and sexually suggestive clothing; Plaintiff's trafficker frequently yelling at her; and Plaintiff frequently exiting the hotel crying with her trafficker.  (*Id.* ¶ 59.) Staff at the Suburban Orlando also observed a "constant and heavy foot traffic in and out of [Plaintiff's] room" of approximately 5–7 men per day who were not hotel guests at unusual times per day, and one instance in which "housekeeping staff witnessed a 'john' fleeing a motel room after physical assaulting [Plaintiff]" after which Plaintiff followed the man into the hallway and yelled for help.  (*Id.* ¶¶ 28, 60.)  Plaintiff further alleges that hotel staff "would hear sounds of abuse, physical violence, screaming, and crying coming from [Plaintiff's] room" and would find Plaintiff's room "littered with used condoms and other sex paraphernalia left behind."  (*Id.* ¶ 61); *see, e.g.*, *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-647-JES-NPM, 2023 WL 5510266, at *5 (M.D. Fla. Aug. 25, 2023) ("The 'red flags' supporting knowledge include payments in cash, large amounts of used condoms and bodily fluids on the sheets and towels, A.D.'s

physical appearance, excessive requests for sheets and cleaning services, the personal relationship with staff and A.D.'s trafficker, and the direct employee encounters with A.D. and her trafficker inside the Quality Inn.").  Notably, Plaintiff also alleges that despite policies and industry standards to the contrary, hotel staff permitted Plaintiff or her trafficker to pay for rooms in cash and did not require them to provide the identification of the individual to whom the room was actually rented.  (*Id.* ¶¶ 25, 58, 71, 84.)  From these facts, the court may infer that staff at the Suburban Orlando, owned and operated by WHG SU, had actual knowledge and were aware and understood or recklessly disregarded the fact that Plaintiff was a victim of sex trafficking at the Suburban Orlando through force, threats, or coercion.  *See Doe #1*, 21 F.4th at 723–24; *B.J. v. G6 Hosp., LLC*, 2023 WL 6120682, at * 11–12 ("plaintiff . . . has pled facts demonstrating Concord Inn's manager's actual knowledge of, and indeed, direct involvement in, plaintiff's trafficking, all of which can . . . be imputed to Concord Inn.").

WHG SU also argues that Plaintiff has failed to establish that it "harbored" her under the statute and contends that a hotel "does not 'harbor' every guest that rents a room and requests amenities."  (Dkt. 39 at 20.)  Although the TVPRA does not define "harbor[ing]," 18 U.S.C. § 1591, to "harbor" is "to give shelter or refuge to."  *Harbor*, Merriam-Webster          Dictionary,          https://www.merriam-webster.com/dictionary/harbor; *see also Safe Harbor*, Black's Law Dictionary (11th ed. 2019) ("An area or means of protection"); *cf. Doe #1*, 21 F.4th at 723–25 (analyzing plain meaning of TVPRA provisions by using dictionaries to define terms).  Defendant

has not cited case law interpreting "harbor[ing]" to exclude the actions alleged in Plaintiff's Complaint.  Indeed, in the few cases found by the court interpreting this provision, courts have held that "providing lodging to someone for the purposes of obtaining her labor or services against her will constitutes 'harboring.'"  *Mouloki v. Epee*, 262 F. Supp. 3d 684, 698 (N.D. Ill. 2017) (citing *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017)).  As explained above, Plaintiff alleges that WHG SU entered into a tacit agreement with Plaintiff's traffickers to provide them with a room and shelter whereby Plaintiff could be trafficked for profit.  The court finds these allegations sufficient to state a claim for "harboring" Plaintiff under 18 U.S.C. §§ 1591(a), 1595. WHG SU's Motion to dismiss Plaintiff's first cause of action for failure to state a claim is denied.

### D. Beneficiary Claims against WHG SU and Choice Hotels

In her second cause of action, Plaintiff brings beneficiary claims against WHG SU and Choice Hotels under TVPRA § 1595(a) and alleges that Defendants "received a financial benefit from participating in a venture with traffickers, including [Plaintiff's] traffickers, despite the fact that [Defendants] knew or should have known that these traffickers were engaged in violations of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1591(a)(2)."  (Dkt. 1 ¶¶ 92–96.)  Defendants raise several arguments that Plaintiff's allegations are insufficient and must be dismissed.  (Dkts. 39, 45.)  The court addresses each argument below and finds that Plaintiff has adequately stated a claim for beneficiary liability against WHG SU and Choice Hotels.

Section 1595(a) provides a cause of action to any victim of the TVPRA against the perpetrator "or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).  In *Doe #1 v. Red Roof Inns, Inc.*, the Eleventh Circuit analyzed the language of 18 U.S.C. § 1595(a) and outlined the elements of a TVPRA beneficiary claim according to the statute's plain language.  *See* 21 F.4th at 719.  To establish a beneficiary claim pursuant to § 1595(a), the plaintiff must plausibly allege "that the defendant (1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) that the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff." *Id.*  Defendants argue that Plaintiff has failed to plead facts to establish each element.  (Dkts. 39, 45.)

### 1.  Knowingly Benefited

To establish the first element of a TVPRA beneficiary claim, a plaintiff "must allege that the defendant knew it was receiving some value from participating in the alleged venture." *Doe #1*, 21 F.4th at 724.  In the context of a hotel operator, a plaintiff may establish that a defendant knowingly benefited under the TVPRA by "repeatedly renting rooms that defendant knew or should have known were being used for sex trafficking." *A.D. v. Holistic Health Healing Inc.*, No. 2:22-cv-641-JES-NPM, 2023 WL 3004546, at *3 (M.D. Fla. Apr. 19, 2023); *see also J.G. v. Northbrook Indus., Inc.*, 619 F.

Supp. 3d 1228, 1234 (N.D. Ga. 2022) ("Several district courts, including this one, have found that the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard.") (collecting cases).  In addition, allegations establishing "'a continuous business relationship' [are] sufficient to show a knowing benefit." *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-646-JES-NPM, 2023 WL 5510090, at *3 (M.D. Fla. Aug. 25, 2023) (citing *G.G. v. Salesforce.com, Inc.*, No. 22-2621, 2023 WL 4944015, at *16 (7th Cir. Aug. 3, 2023)).

Here, Plaintiff alleges that Defendants received revenue from the operation of the Suburban Orlando, including the renting of rooms to Plaintiff's traffickers.  (Dkt. 1 ¶ 84.)  Plaintiff further alleges that Choice Hotels received benefits from its continuous business relationship with WHG SU in the form of "franchising fees, royalty fees, and other payments."  (*Id.* ¶ 85.)  Accordingly, Plaintiff's allegations are sufficient to establish the first element of her TVPRA beneficiary claim that Defendants knowingly received a benefit.

## 2.  From Participation in a Venture

To establish the second element of a TVPRA beneficiary claim, a plaintiff must plead facts to establish that the defendant knowingly benefitted "from participating in a venture."  18 U.S.C. § 1595(a); *see Doe #1*, 21 F.4th at 724.  In *Doe #1*, the Eleventh Circuit interpreted this provision "according to its plain meaning" and defined "venture" as an "undertaking or enterprise involving risk and potential profit," and participation as "to take part in or share with others in common or in an association." *Id.* at 724–25 (citing Black's Law Dictionary (11th ed. 2019) and Oxford English

Dictionary (2d ed. 1989)).  Thus, to plead this element, Plaintiff must "allege that [Defendants] took part in a common undertaking or enterprise involving risk and potential profit." *Id.*  The plaintiff "must allege facts from which the Court could reasonably infer the hotels 'could be said to have a tacit agreement' with the trafficker [but p]laintiff need not show that defendants had actual knowledge of the participation in the sex-trafficking venture." *A.D. v. Best W. Int'l, Inc.*, No. 2:22-cv-651-JES-NPM, 2023 WL 5510064, at *4 (M.D. Fla. Aug. 25, 2023) (quoting *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV, 2020 WL 6121939, at *5 (S.D. Fla. Sept. 30, 2020)).  For instance, in *Doe #1*, the Eleventh Circuit suggested that the kind of allegations that a plaintiff's abuser "had prior commercial dealings with the [operators], which the parties wished to reinstate for profit . . . would establish a hotel operator's participation in a venture with a sex trafficker." *Doe #1*, 21 F. 4th at 725–26 (citing *Ricchio*, 853 F.3d at 556–58).  "[T]he factor that appears to differentiate plaintiffs who adequately state TVPRA beneficiary claims from those who do not is that the successful plaintiffs 'connect the dots' between the plaintiff's traffickers and the specific defendant in the case." *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d 1307, 1317 (N.D. Ga. 2022) (collecting cases).  "One way to connect the dots is to allege a 'continuous business relationship' between a defendant hotel and a sex trafficker where the defendant rented rooms to people it knew or should have known were engaged in sex trafficking." *Id.*; *A.D. v. Best W. Int'l, Inc.*, 2023 WL 5510064, at *4 (citing *J.G. v. Northbrook Indus., Inc.*, 619 F. Supp. 3d at 1235); *see also S. Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F. Supp. 3d 1069, 1081 (M.D. Fla. 2021).

- 20 -

### a. Owner and Operator Participation in a Venture

Here, Plaintiff alleges that WHG SU participated in the venture by renting rooms to Plaintiff's traffickers and providing them not only with a physical space, "but also with the cover of a legitimate business venue where they could profit from sexual exploitation with a low-risk of disruption." (Dkt. 1 ¶ 84(c).) According to Plaintiff, there existed an implicit agreement between Defendants and the traffickers, evidenced by the traffickers taking no steps to conceal their activities without concern for detection or interference by the hotel staff, and WHG SU employees' allowing the traffickers to take steps to avoid law enforcement, such as accepting cash payments and not requiring identification. (*Id.*) Plaintiff further alleges that hotel staff "observed open and apparent signs of activity directly related to the trafficking" of Plaintiff, including "constant and heavy foot traffic in and out of [Plaintiff's] room involving men who were not hotel guests" that were entering and exiting at unusual times, observing and hearing signs of physical abuse against Plaintiff, and finding Plaintiff's room "littered with used condoms and other sex paraphernalia left behind." (*Id.* ¶¶ 60–62.) As alleged in the Complaint, WHG SU "received revenue by renting hotel rooms to these traffickers on an ongoing basis despite knowing, or in reckless disregard of the fact, that these rooms would be used as a venue for sexual exploitation of individuals, including [Plaintiff]." (*Id.* ¶ 90.)

Drawing all reasonable inferences in Plaintiff's favor, such allegations are sufficient to establish that WHG SU "participated in a venture" with Plaintiff's traffickers under § 1595(a). *See, e.g.*, *S. Y. v. Wyndham Hotels & Resorts, Inc.*, 519 F.

Supp. 3d at 1081 (Defendant "participated in a venture 'by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff S.Y. for commercial sexual exploitation by repeatedly renting rooms at Days Inn Hotel to people' [defendant] 'knew or should have known were engaged in sex trafficking.'"); *A.D. v. Best W. Int'l, Inc.*, 2023 WL 5510064, at *4 ("The fact that Trafficker 2 spent all day loitering around the parking lot without consequences and that a 'procession of men' who were not registered guests were openly going into a room support participation in the venture."); *J.C. v. I Shri Khodiyar, LLC*, 624 F. Supp. 3d at 1317–18 (finding allegations sufficient against "an operator that was closely involved with the daily management of the hotel and allegedly did far more than simply receive revenue and reviews mentioning sex work.").

### b. Franchisor Participation in a Venture

Choice Hotels argues that Plaintiff has failed to allege that it participated in a venture as defined by the TVPRA. (Dkt. 45 at 10–15.) The court disagrees. The TVPRA does not require that the venture alleged constitute a "sex trafficking venture." *See Doe #1*, 21 F.4th at 727 (declining to consider argument made first time on appeal that franchisors "participated in commercial ventures to operate hotels and that those hotel ventures violated the statute" but defining a TVPRA "venture" as any "common undertaking involving risk or profit"). Plaintiff alleges throughout the Complaint not only that Choice Hotels had an indirect relationship with Plaintiff's traffickers through WHG SU, but that Choice Hotels participated in a commercial venture in operating

the Suburban Orlando with WHG SU.  *See, e.g.*, (Dkt. 1 ¶¶ 68–75, 80, 84.)  For example, Plaintiff alleges that Choice Hotels, as the franchisor, "retained control over the details and methods of aspects of the operation of the Suburban Orlando that are directly relevant to the proliferation of sex trafficking at that property," such as training the staff; the hotel's response, policies, and procedures regarding human trafficking; controlling the room reservation system, including pricing and policies for payment methods and identification requirements; and overseeing security on the property. (*Id.*)  Plaintiff further alleges that WHG SU and Choice Hotels operated the Suburban Orlando "with the shared objective of maximizing revenue and profits" and that Choice Hotels received financial benefits from the venture in the form of franchising fees, royalty fees, and other payments.  (*Id.* ¶ 85.)  Choice Hotels' argument that the alleged participation is limited to its ineffective response to trafficking at the Suburban Orlando misconstrues the nature of Plaintiff's allegations and fails to address the scope of the "common undertaking involving risk or profit" alleged in the Complaint.  *Cf. A.D. v. Best W. Int'l, Inc.*, 2023 WL 5510064, at *4 (dismissing franchisor defendant for failure to allege a venture where "[t]he 'participation' in the sex trafficking venture is essentially that the franchisor and the hotel operator did not fight hard enough to keep these traffickers from using their hotel"); *see C. T. v. Red Roof Inns, Inc.*, No. 2:22-cv-834-JES-KCD, 2023 WL 3510879, at *4 (M.D. Fla. Mar. 11, 2023) (granting leave to amend where amended complaint sufficiently alleges venture against franchisee where plaintiff "never calls the ventures 'sex trafficking ventures' or anything similar," "all references are to a commercial, hotel-operating enterprise").  Plaintiff's allegations are

sufficient to infer that Choice Hotels participated in a "venture" to establish the third element of her TVPRA beneficiary claim. *See, e.g.*, *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1296 (M.D. Fla. 2021) (allegations sufficient to state claim that franchisor participated in TVPRA "venture"); *S.Y. v. Marriott Int'l, Inc.*, No. 2:20-cv-627-JES-MRM, 2021 WL 2003103, at *4 (M.D. Fla. May 19, 2021) (finding allegations sufficient where hotel defendants participated in a venture where "'acts and omissions of the Marriott Hotel Defendants served to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization' of plaintiff 'for commercial sexual exploitation by repeatedly renting rooms to people they knew or should have known were engaged in sex trafficking.'"); *G.G. v. Salesforce.com, Inc.*, 76 F.4th at 554 ("[W]e agree with the district court that the relevant 'venture' under Section 1595 need not be 'specifically a sex trafficking venture.' [] Rather, as the Eleventh Circuit has acknowledged, the alleged venture can be a '*commercial* venture[ ]' like running or expanding a business.) (citing *Doe #1*, 21 F.4th at 727).

### 3.  Plaintiff Sufficiently Alleges Venture Violated the TVPRA

Plaintiff's allegations are sufficient to state a claim that the alleged ventures violated the TVPRA as to Plaintiff.  To establish the third element of a beneficiary claim, "the venture in which the defendant participated and from which it knowingly benefited must have violated the TVPRA as to the plaintiff."  *Doe #1*, 21 F.4th at 725. Plaintiff alleges that the ventures engaged in violations of 18 U.S.C. § 1591(a).  (Dkt. 1 ¶ 94.)  As discussed above, section 1591(a) "makes it a crime to 'knowingly' harbor or solicit a person for commercial sex while ' knowing . . . that means of force, threats

of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act'" and also "prohibits anyone from knowingly 'benefit[ting], financially or by receiving anything of value' from 'knowingly assisting, supporting, or facilitating a violation of subjection (a)(1)." *Doe #1*, 21 F.4th at 725 (citing 18 U.S.C. § 1591(a)).  Thus, Plaintiff "must plead sufficient facts to plausibly allege that the venture[s] in which [Defendants] participated committed one of these crimes against [her]." *Id.*

As explained above, Plaintiff sufficiently alleges that she was a victim of human trafficking at the Suburban Orlando and that her trafficking was the result of an "implicit agreement" between her traffickers and the hotel staff to facilitate her trafficking through, among other things, the rental of hotel rooms. *E.g.*, (Dkt. 1 ¶¶ 71, 84.)  Defendants do not meaningfully challenge that Plaintiff has satisfied this element and the court finds her allegations sufficient to establish that the alleged ventures violated the TVPRA as to Plaintiff.  *See A.D. v. Best W. Int'l, Inc.*, No. 2:22-cv-652-JES-NPM, 2023 WL 2955832, at *8 (M.D. Fla. Apr. 14, 2023) (finding third element sufficiently pled where complaint "alleges that A.D. was sex trafficked in violation of § 1591(a)").

### 4.  Knowledge that Venture Violated the TVPRA as to Plaintiff

To sufficiently plead the fourth element, "the defendant must have either actual or constructive knowledge that the venture—in which it voluntarily participated and from which it knowingly benefited—violated the TVPRA as to the plaintiff." *Doe #1*, 21 F.4th at 725.  Unlike a perpetrator claim brought pursuant to § 1591 which requires

actual knowledge, § 1595(a) imposes liability where a defendant "knew or should have known [that the venture] has engaged in an act in violation of this chapter." *Id.*; *see also Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d at 1155.

As discussed above, the court finds that Plaintiff's allegations are sufficient to infer that WHG SU had actual knowledge of the TVPRA violations as to Plaintiff. Thus, Plaintiff has adequately alleged knowledge to establish a beneficiary claim against WHG SU as well.

With respect to Choice Hotels, Plaintiff's allegations are sufficient to infer that Choice Hotels had at least constructive knowledge, i.e. that Choice Hotels knew or should have known, of the TVPRA violations as to Plaintiff.  For instance, Plaintiff alleges that Choice Hotels was "directly involved in the relevant operations of the Suburban Orlando and exercised systemic control over WHG SU [] with respect to operation of the Suburban Orlando[.]"  (Dkt. 1 ¶ 33.)  In addition to the above-discussed allegations with respect to Plaintiff in particular, Plaintiff further alleges that Choice Hotels controlled the reservation system through which WHG SU checked in guests and charged for rooms, and set policies for payment methods and identification requirements.  (*Id.* ¶ 71.)  Choice Hotels was further responsible for enforcing policies governing reporting criminal activity, placed and monitored security cameras, reviewed customer complaints, and conducted inspections of the Suburban Orlando.  (*Id.* ¶ 74.)  Plaintiff further alleges that Choice Hotels was generally aware of the pervasiveness of human trafficking, prostitution, and criminal activity at the Suburban Orlando through its monitoring of customer reviews and its awareness of criminal

reports at the property. (*Id.* ¶¶ 50–53.) Among other things, Plaintiff alleges that Choice Hotels employed "field agents" to directly supervise and manage WHG SU, monitored and audited WHG SU for compliance with policies, and "retained control over relevant aspects of the operations of Suburban Orlando" such that had it properly exercised these functions, it would and should have discovered that Plaintiff was being trafficked at the Suburban Orlando. (*Id.* ¶¶ 82, 85.) Accordingly, drawing all reasonable inferences in her favor, Plaintiff's Complaint sufficiently alleges that Defendants knew or should have known that Plaintiff was a victim of human trafficking at the Suburban Orlando and that the alleged ventures violated the TVPRA as to Plaintiff. *See, e.g.*, *S. Y. v. Holiday Hosp. Franchising, LLC*, No. 2:20-cv-624-JES-MRM, 2021 WL 1751363, at *6 (M.D. Fla. May 4, 2021) (finding substantially similar allegations "sufficient to reasonably infer the defendants knew or should have known of the sex trafficking venture."); *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d at 1297 (same); *R.K. v. Red Roof Inns, Inc.*, No. 2:22-cv-3782, 2024 WL 1332152, at *7 (S.D. Ohio Mar. 28, 2024) ("The facts specific to Plaintiff's own sex trafficking, in combination with her allegations that Defendant franchisors were on notice about the prevalence of sex trafficking at their hotels yet continued to rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence, together support a conclusion that Defendants had constructive knowledge of the trafficking occurring at their hotels because they 'should have known' about the nature of the venture under the beneficiary theory's negligence standard.").

### 5.  Conclusion as to Beneficiary Claims

As discussed above, Plaintiff has sufficiently pleaded facts to establish each element of her beneficiary claims against WHG SU and Choice Hotels pursuant to 18 U.S.C. § 1595(a).  Defendants' Motions to dismiss Plaintiff's second cause of action are denied.

### E.  Vicarious Liability Claim against Choice Hotels

In her third cause of action, Plaintiff alleges that Choice Hotels is vicariously liable for the actions of WHG SU in violating the TVPRA under a theory of actual agency.  (Dkt. 1 ¶¶ 97–101.)  Choice Hotels moves to dismiss and argues that the TVPRA does not apply vicarious liability or agency principles, that Plaintiff fails to allege any apparent agency, and that the adverse-interest exception should preclude any vicarious liability.  (Dkt. 45 at 19–23.)

As discussed above, the TVPRA does not preclude vicarious liability.  *Treminio*, 649 F. Supp. 3d at 1232 (collecting cases).  It is further "well-established that a franchise relationship does not by itself create an agency relationship between the franchisor and franchisee."  *C. T. v. Red Roof Inns, Inc.*, 2023 WL 3510879, at *3 (citing *Cain v. Shell Oil Co.*, 994 F. Supp. 2d 1251, 1252 (N.D. Fla. 2014)).  However, in Florida, "[f]ranchisors may well enter into an agency relationship with a franchisee if, by contract or action or representation, the franchisor has directly or apparently participated in some substantial way in directing or managing acts of the franchisee, beyond the mere fact of providing contractual franchise support activities."  *Id.*

(quoting *Mobil Oil Corp. v. Bransford*, 648 So.2d 119, 120 (Fla. 1995)); *see also S. Y. v. Best W. Int'l, Inc.*, 2021 WL 2315073, at *7.

Taken as true, Plaintiff's allegations establish far more than a contractual franchisor-franchisee relationship between Choice Hotels and WHG SU. Rather, Plaintiff alleges not only an agency relationship, but that Choice Hotels maintained intimate control over the day-to-day operations of the hotel, including training hotel staff and implementing various policies and procedures. *E.g.* (Dkt. 1 ¶ 71.) Moreover, Plaintiff alleges that the actions taken by WHG SU and the Suburban Orlando staff were not adverse to Choice Hotels' interests, but rather generated revenue for Defendants through the continued renting of rooms. *E.g.*, (*id.* ¶ 41); *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1096 (11th Cir. 2017) ("At least at the motion to dismiss stage," the court "cannot say [agent's] interests were *entirely* adverse to the Bank's interests because her actions brought the Bank some short-term benefit."). Plaintiff's allegations are sufficient at this stage to plead a claim for vicarious liability against Choice Hotels. *See, e.g.*, *S. Y. v. Best W. Int'l, Inc.*, 2021 WL 2315073, at *7 (finding sufficient vicarious liability allegations where complaint "asserts that in a variety of ways [franchisor] exercised control over the means and methods of how [operator] conducted business, such as by profit sharing, standardized training, standardized rules of operation, regular inspection, and price fixing"); *C.S. v. Choice Hotels Int'l, Inc.*, No. 2:20-cv-635-JES-MRM, 2021 WL 1966431, at *9 (M.D. Fla. May 17, 2021) (same); *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d at 1299 (same).

### F. Joint and Several Liability

Choice Hotels argues that Defendants may not be held jointly and severally liable under the TVPRA.  (Dkt. 45 at 23–24.)  Specifically, Choice Hotels argues that the TVPRA does not provide for joint and several liability and the court must therefore apply Florida's damages statute for negligence actions.  (Dkt. 45 at 23–24 (citing Fla. Stat. § 768.81).)  However, in analyzing claims under the TVPRA, courts have looked to its mandatory restitution provision in 18 U.S.C. § 1593, to find that the "[t]he TVPRA allows the Court to decide whether to impose joint and several liability or several (individual) liability."  *Machhal v. Machhal*, No. 1:21-cv-888, 2023 WL 2661107, at *9 (W.D. Mich. Mar. 28, 2023); *Leiva v. Clute*, No. 4:19-cv-87-TLS-JPK, 2020 WL 8514822, at *21 (N.D. Ind. Dec. 16, 2020) ("Defendants all contributed to Plaintiffs' losses under the TVPA and, as permitted by the statute, the Court finds that Defendants are jointly and severally liable for the full restitution amount."), *report and recommendation adopted,* 2021 WL 307302 (N.D. Ind. Jan. 29, 2021).  Section 1593 provides for mandatory restitution in accordance with 18 U.S.C. § 3664, which in turn provides that "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."  18 U.S.C. § 3664(h).  Plaintiff alleges that all Defendants "participated in this venture by acting jointly to rent rooms to traffickers," and that Defendants otherwise operated jointly to cause Plaintiff's injuries as alleged in the Complaint.  *E.g.*,

(Dkt. 1 ¶ 84.)  At this stage, based on Plaintiff's well-pleaded allegations, the court declines to dismiss Plaintiff's claims related to joint and several liability.

### G. Shotgun Pleading

Finally, Defendants move to dismiss the Complaint as an improper shotgun pleading.  Choice Hotels argues that Plaintiff's failure to distinguish between both Choice Hotels entities makes it impossible for them to identify which entity was responsible for which conduct and to respond to the Complaint.  (Dkt. 45 at 7–8.) WHG SU argues that the Complaint must be dismissed because Plaintiff's first and second causes of action incorporate by reference all preceding allegations.  (Dkt. 39 at 7–9.)  Plaintiff responds in opposition.  (Dkts. 50, 51.)  Upon consideration, the court agrees with Plaintiff.

Initially, while the Complaint does repeatedly refer to the Choice Hotels Defendants together, "[t]he failure to specify a particular defendant is not fatal, however, when '[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct.'"  *S. Y. v. Holiday Hosp. Franchising, LLC*, 2021 WL 1751363, at *2 (quoting *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th Cir. 2000)). Plaintiff uses the term "Choice Hotels" to refer to Defendants Choice Hotels International Service Corp. and Choice Hotels International Inc. (Dkt. 1 ¶ 16), and a fair reading of the Complaint demonstrates that Plaintiff alleges that each is liable for the alleged misconduct.  *See, e.g.*, *S.Y. v. Holiday Hosp. Franching, LLC*, 2021 WL 1751363, at *2 ("While defendants may disagree that such allegations are accurate, that dispute is for another day.").

Further, WHG SU is correct that the Eleventh Circuit has identified as the most common type of shotgun pleading, "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015). WHG SU is further correct that Plaintiff's first and second causes of action "incorporate[] all previous allegations." (Dkt. 1 ¶¶ 87, 92.) However, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increased the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324. Indeed, Defendants have not moved for a more definite statement and "did not have any trouble understanding the claim[s] against them[.]" *Halbig v. Lake Cnty., Fla.*, No. 23-11875, 2024 WL 470420, at *2 (11th Cir. Feb. 7, 2024); *see also Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1208 (11th Cir. 2019) ("It is true that each count of [the] complaint adopts the allegations of all preceding counts. It is also true that the complaint is perhaps longer than it needs to be. But it does not contain endless irrelevancies. And it does what complaints must do: it 'give[s] the defendant[ ] adequate notice of the claims against [it] and the grounds upon which each claim rests.'") (quoting *Weiland*, 792 F.3d at 1323). The court therefore declines to dismiss Plaintiff's Complaint as an impermissible shotgun pleading.

### H. Motion to Strike

Choice Hotels moves to strike allegations that it argues "are not related to the facts in controversy and will only serve to confuse the issues." (Dkt. 45 at 24.) Specifically, Choice Hotels seeks to strike paragraphs 36 through 52, which it argues are "impertinent, salacious, and meant merely to enflame emotions." (*Id.*) Pursuant to Federal Rule of Civil Procedure 12(f), on its own or by motion, the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." *See A.D. v. Cavalier Mergersub LP*, No. 2:22-cv-095-JES-NPM, 2022 WL 4357989, at *1 (M.D. Fla. Sept. 20, 2022). A motion to strike is not intended "to procure the dismissal of all or part of complaint" and "should be granted only if the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Schmidt v. Life Ins. Co. of N. Am.*, 289 F.R.D. 357, 358 (M.D. Fla. 2012) (quoting *Reyher v. Trans World Airlines*, 881 F. Supp. 574, 576 (M.D. Fla. 1995)). As such, "a motion to strike is a drastic remedy and is disfavored by the courts." *Id.* Paragraphs 36 through 52 in the Complaint describe Choice Hotels' general awareness of the problems associated with sex trafficking in the hotel industry, within its hotels in particular, and at the Suburban Orlando. (Dkt. 1 ¶¶ 36–52.) The court does not find these allegations to be so immaterial and impertinent to have no possible relationship to the controversy at issue, especially where Choice Hotels itself has challenged the allegations related to its knowledge of the alleged sex trafficking. *See, e.g., C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d at 1294 ("The Court does not find that the allegations identified

by defendants are overly redundant or unduly prejudicial, and the 'drastic remedy' of striking the allegations is not justified."); *S. Y. v. Sunstream Hotels & Resorts, LLC*, No. 2:20-cv-611-JES-MRM, 2021 WL 857118, at *2 (M.D. Fla. Mar. 8, 2021) (declining to strike allegations relating to "defendant's knowledge of sex trafficking, the failure to prevent it, and the motivation for doing so."). Choice Hotels' Motion to strike is denied.

## CONCLUSION

Accordingly, and for the reasons explained herein:

1. Defendant WHG SU Delegates LLC's Motion to Dismiss Plaintiff's Original Complaint (Dkt. 39) is **DENIED**.

2. Defendants Choice Hotels, Choice Hotels International, Inc., and Choice Hotels International Services Corp.'s Motion to Dismiss Plaintiff's Complaint, or in the Alternative, Motion to Strike (Dkt. 45) is **DENIED**.

3. Defendants must serve a responsive pleading to Plaintiff's Complaint within 14 days in accordance with Federal Rule of Civil Procedure 12(a)(4).

**ORDERED** in Orlando, Florida, on June 12, 2024.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record