UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JANE DOE K.R.,

      Plaintiff,

v.                                 Case No: 6:23-cv-1012-JSS-LHP

CHOICE HOTELS, WHG SU
DELEGATES, LLC, CHOICE
HOTELS INTERNATIONAL, INC.,
and CHOICE HOTELS
INTERNATIONAL SERVICES
CORP.,

      Defendants.
_____/

## ORDER

Defendants, WHG SU Delegates, LLC, Choice Hotels, Choice Hotels International Services Corp., and Choice Hotels International, Inc., move for summary judgment. (Dkts. 130, 135, 138; *see* Dkts. 171, 172, 173.) Plaintiff, Jane Doe K.R., opposes the motions. (Dkts. 167, 168.) Upon consideration, for the reasons outlined below, the court grants the motions.

## BACKGROUND

Plaintiff is a victim of sex trafficking. (Dkt. 130-1 at 162–63.) For approximately twelve weeks between March and May 2013, an individual named Quantae Veales forced Plaintiff to have sex with various "johns" for profit at the Suburban Extended Stay in Orlando, Florida. (*Id.* at 12, 80, 162–63.) The Suburban

Orlando was owned and operated by Defendant WHG SU, which had a franchise agreement with Defendant Choice Hotels International, Inc. allowing it to use the Suburban Extended Stay Hotel brand.  (Dkt. 134 at 3–5.)

According to Plaintiff, her sexual exploitation was apparent to hotel staff.  (*See* Dkt. 130-1 at 189–90.)  For instance, Plaintiff, who was only eighteen at the time, would often carry thousands of dollars in cash, which she would use to pay for two rooms.  (*Id.* at 18, 189.)  Plaintiff would also appear fearful and anxious when interacting with hotel staff.  (*Id.* at 18, 125, 189.)  Further, Plaintiff would order excessive amounts of towels and sheets and leave her rooms, which were invariably located at the back of the hotel, littered with used condoms.  (*Id.* at 18–19, 120, 125, 129, 189, 193.)  There was even an incident in which Plaintiff was seen chasing a "john" through the halls in nothing more than her torn underwear after he failed to pay.  (*Id.* at 120–24.)

The record does not reflect the exact date that Plaintiff was last trafficked at the Suburban Orlando, but the parties agree that Plaintiff left the hotel at least "[s]everal days before May 26, 2013."  (Dkt. 134 at 7.)  Around that time, Plaintiff left the state with Veales and drove to St. Louis, where he was arrested on May 29, 2013.  (*Id.* at 7–8; *see* Dkt. 130-1 at 132–33, 135, 138–42, 251; *see also* Dkt. 130-7 at 2).

On May 31, 2023, Plaintiff brought this case against Defendants under the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595.  (*See* Dkt. 1 ¶¶ 87–101; Dkt. 150 ¶¶ 82–91.)  The operative complaint asserts two causes of action.  (*See* Dkt. 150 ¶¶ 82–91.)  Plaintiff first alleges that Defendants knowingly

benefited from participating in two ventures that violated the TVPRA. (*Id.* ¶¶ 82–86.)
Specifically, Plaintiff contends that Defendants violated the TVPRA when they joined
to form "a hotel franchising venture," which they "knew or should have
known . . . facilitated violations" of the TVPRA. (*Id.* ¶ 85.) Plaintiff also contends
that Defendants formed a commercial venture with Veales, in which they provided a
venue where sex trafficking could flourish in exchange for a share of the profits. (*Id.*
¶¶ 5, 84.) Plaintiff's other cause of action asserts a vicarious liability claim against
Choice Hotels under a theory of actual agency for WHG SU's conduct facilitating
Plaintiff's trafficking. (*Id.* ¶¶ 87–91.)

## APPLICABLE STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists
and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).
The party moving for summary judgment must "cit[e] to particular parts of materials
in the record, including depositions, documents, electronically stored information,
affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other
materials" to support its position that it is entitled to summary judgment. Fed. R. Civ.
P. 56(c)(1)(A). "The court need consider only the cited materials" when resolving the
motion. Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703
F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may
decide a motion for summary judgment without undertaking an independent search
of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.* The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes which preclude judgment as a matter of law. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). "The evidence presented cannot consist of conclusory allegations, legal conclusions[,] or evidence which would be inadmissible at trial."

*United States v. Burdieri*, No. 2:13-CV-748-FTM-38, 2013 WL 6817639, at *1 (M.D. Fla. Dec. 26, 2013) (quotation omitted).

In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence or make factual findings. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

Defendants submit that they are entitled to summary judgment for several reasons. (*See* Dkts. 130, 135, 138.) WHG SU and Choice Hotels International, Inc. have each moved for summary judgment, asserting that Plaintiff's claims are time-barred and lack factual support. (*See* Dkts. 130, 138.) Choice Hotels and Choice Hotels International Services Corp. have joined Choice Hotels International, Inc.'s motion, (*see* Dkt. 138 at 1 n.1), and moved for summary judgment citing a lack of evidence to suggest that they contributed to or benefited from Plaintiff's trafficking, (*see* Dkt. 135). The court begins its analysis with the motion by Choice Hotels and Choice Hotels International Services Corp., and then turns to the arguments raised in WHG SU and Choice Hotels International, Inc.'s motions.

### A. Defendants Choice Hotels and Choice Hotels International Services Corp.

Defendants Choice Hotels and Choice Hotels International Services Corp. contend that they are entitled to summary judgment primarily because Plaintiff has not produced any evidence to suggest that they participated in or benefited from her trafficking. (Dkt. 135.) They also contend Plaintiff's claims are time-barred and lack factual support. (*See* Dkt. 138 at 1 n.1, 7–24.) Ultimately, these Defendants are entitled to summary judgment.

First, the parties stipulate that Choice Hotels did not exist at the time of Plaintiff's trafficking and that Choice Hotels International Services Corp. "played no role in Plaintiff's allegations." (Dkt. 134 at 3.) These stipulations are "formal concessions that 'have the effect of withdrawing [the] fact[s] from issue and dispensing wholly with the need for proof.'" *Spears v. Bay Inn & Suites Foley, LLC*, 105 F.4th 1315, 1321–22 (11th Cir. 2024) (quoting *Christian Legal Soc'y. Chapter of the Univ. of Cal., Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 678 (2010)). Given these undisputed facts, Plaintiff cannot show that Choice Hotels and Choice Hotels International Services Corp. knowingly benefited from or participated in a venture that violated the TVPRA. *See Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 719 (11th Cir. 2021) (explaining that a plaintiff must show that the defendant knowingly benefitted from participating in a venture that violated the TVPRA to establish a beneficiary liability); *Marshall v. Mayor of Savannah*, 366 F. App'x 91, 97 (11th Cir. 2010) (affirming summary judgment against a plaintiff who could not establish "an element essential to her claim

on which she [would] bear the burden of proof at trial").  It also "goes without saying that [Plaintiff] cannot sue a non-existent entity," like Choice Hotels.  *Edmunds v. Asurion, LLC*, No. 22-CV-60361-CIV, 2024 WL 620932, at *3 (S.D. Fla. Feb. 14, 2024) (dismissing claims against a non-existent entity with prejudice "for the simple reason that it [did not] exist"); *see Jacobs v. Land Home Fin. Servs. Inc.*, 2025 U.S. Dist. LEXIS 39592, at *1 (Mar. 5, 2025) (dismissing a suit against a non-existent entity because non-existent entities cannot be sued); *Witter v. Bank of Am.*, No. 1:07-CV-1344-GET-AJB, 2008 WL 11470984, at *6 (N.D. Ga. May 15, 2008) (explaining that the plaintiff "clearly [could not] bring claims against a non-existent entity"); *see also Ajjahnon v. Amerilife of N.C., LLC*, No. 6:22-CV-329-JSS-LHP, 2024 WL 4710160, at *4 (M.D. Fla. Nov. 7, 2024) (noting that a court may grant summary judgment for an improperly named defendant if it is determined that the plaintiff has sued the wrong company).

Second, had the parties not stipulated to Choice Hotels' non-existence and Choice Hotels International Services Corp.'s non-participation, the result would be the same, as Plaintiff failed to meaningfully oppose their motion for summary judgment. (*See* Dkt. 168.)  Although Plaintiff purportedly responded to the motion in conjunction with Choice Hotels International, Inc.'s motion for summary judgment, her response is tailored to addressing Choice Hotels International, Inc.'s arguments.  (*Compare* Dkts. 135, 138, *with* Dkt. 168.)  As a result, Plaintiff effectively left Choice Hotels and Choice Hotels International Services Corp.'s motion for summary judgment unopposed, *see Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("A party's failure

to respond to any portion or claim in a motion indicates such portion, claim[,] or
defense is unopposed." (alterations adopted and quotation omitted)), and their factual
allegations undisputed, *see Ogwo v. Miami Dade Cnty. Sch. Bd.*, 702 F. App'x 809, 810
(11th Cir. 2017) (explaining that courts are to consider a movant's factual assertions
to be undisputed when the non-movant fails to address them adequately). The court
may therefore grant summary judgment if the facts in the record—including those
which Plaintiff has not disputed—illustrate that Choice Hotels and Choice Hotels
International Services Corp. are entitled to judgment as a matter of law. *Id.*; *Lane v.
G.A.F. Material Corp.*, No. 8:11-CV-2851-T-30TBM, 2013 WL 1213063, at *7 (M.D.
Fla. Mar. 25, 2013) ("A failure to respond to the motion for summary judgment merely
deems the movant's assertions of fact 'undisputed for purposes of the motion,' but the
record must show the movant is entitled to summary judgment." (quoting Fed. R. Civ.
P. 56(e)(2)). Here, summary judgment is warranted because Plaintiff has effectively
conceded that neither party participated in her trafficking and thus she cannot prove
an essential element of her claim, *see Doe #1*, 21 F.4th at 719.

Third, Plaintiff's claims are time-barred. As explained below, Plaintiff's
TVPRA claims were subject to a ten-year statute of limitations, 18 U.S.C. § 1595(c)(1),
yet she waited until the limitations period had passed to file suit, (*see* Dkt. 1). Although
Plaintiff claims that extraordinary circumstances prevented her from pursuing her legal
rights within the limitations period, she failed to show that the limitations period
should be tolled. (*See* Dkt. 167 at 19–21; Dkt. 168 at 20–21.) Accordingly, Choice

Hotels and Choice Hotels International Services Corp. are entitled to summary judgment.

### B.  Defendants Choice Hotels International, Inc. and WHG SU Delegates

WHG SU and Choice Hotels International, Inc. contend that they are entitled to summary judgment because Plaintiff's claims are untimely and are not supported by the evidence.  (*See* Dkts. 130, 138.)  Because the court agrees that Plaintiff's claims are time-barred, it does not address Defendants' remaining arguments.

Plaintiff has sued Defendants under section 1595 of the TVPRA.  (*See* Dkt. 150.) Because Plaintiff had reached the age of eighteen at the time of her trafficking, (Dkt. 134 at 6), her claims are subject to a ten-year statute of limitations, 18 U.S.C. § 1595(c)(1).   Statutes of limitation are meant to encourage the "diligent prosecution of known claims," *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 504 (2017) (quotation omitted), and to "promot[e] the fair administration of justice," *Arce v. Garcia*, 434 F.3d 1254, 1260 (11th Cir. 2006).  Given their importance in the American legal system, statutes of limitation "should be strictly enforced in all but the most egregious of circumstances."  *Id.* at 1265; *see Horsley v. Univ. of Ala.*, 564 F. App'x 1006, 1008 (11th Cir. 2014) ("In general, once a limitations period has run, the action is barred, regardless of the merits of the plaintiff's claims.").

A defendant asserting a statute of limitations defense bears the burden of proving that the action is time-barred.  *Weitz*, 913 F.2d at 1552.  To obtain summary judgment, such a defendant must show that "there is no genuine issue of material fact as to whether the statute of limitations has run."  *100079 Can., Inc. v. Stiefel Labs.*, 954

F. Supp. 2d 1360, 1368 (S.D. Fla. 2013) (quotation omitted). The defendant "must establish that the record taken as a whole could not lead a rational trier of fact to find for" the plaintiff "on the timeliness issue." *Id.* (quotation omitted). Once the defendant "shows that the applicable statute of limitations bars the claim, the burden shifts to the [plaintiff] to demonstrate that an exception or [a] tolling provision applies." *Ashcroft v. Randel*, 391 F. Supp. 2d 1214, 1219 (N.D. Ga. 2005).

Generally, a federal claim accrues "when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quotations omitted); *accord Doe v. Swearingen*, 51 F.4th 1295, 1303 (11th Cir. 2022) ("In the usual course, we start the limitations period when the plaintiff was injured."). Thus, the limitations period for a federal cause of action typically starts to run when the underlying facts "are apparent or should be apparent to a person [exercising] a reasonably prudent regard for [her] rights." *Swearingen*, 51 F.4th at 1303 (quoting *Rozar v. Mullis*, 85 F.3d 556, 561–62 (11th Cir. 1996)); *accord Karantsalis v. City of Miami Springs*, 17 F.4th 1316, 1322–23 (11th Cir. 2021) ("The general federal rule is that the statute of limitations does not begin to run *until the facts which would support a cause of action* are apparent or should be apparent to a person with a reasonably prudent regard for his rights." (emphasis added and quotation omitted)).

Indeed, the timeliness of this suit turns on when the underlying facts were, or should have been, apparent to Plaintiff, or a person exercising a reasonably prudent regard for her rights. *See Swearingen*, 51 F.4th at 1303. Plaintiff testified in her

deposition that her trafficking ended on May 29, 2013, the date of Veales's arrest, (Dkt. 130-1 at 141–42; *see* Dkt. 130-6 at 2), and the parties agree that she left the Suburban Orlando at least several days earlier, (Dkt. 134 at 7–8; *see* Dkt. 130-1 at 13–14). Plaintiff filed suit on May 31, 2023.  (Dkt. 1.)  Thus, her claims are untimely unless they accrued on or after May 31, 2013.  *See* 18 U.S.C. § 1595(c)(1).

With respect to her claim of beneficiary liability under the TVPRA, Plaintiff knew or should have known that Defendants "(1) knowingly benefited (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that the undertaking or enterprise violated the TVPRA . . ., and (4) that . . . [Defendants] had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA" before May 31, 2013.  *See Doe #1*, 21 F.4th at 719.  By that time, Plaintiff understood that she was being trafficked and that Veales was forcing her to have sex for money at the Suburban Orlando.  (*See* Dkt. 130-1 at 162–63.)  As to the first and second elements of her TVPRA claims, Plaintiff contends that Defendants knowingly benefitted from participating in two ventures—the first with one another, the second with Veales—to operate the hotel as a venue for sex trafficking, in violation of the TVPRA.  (Dkt. 150 ¶¶ 84–85; *see* Dkt. 167 at 7–10; Dkt. 168 at 8, 11–12, 17.)  The undisputed evidence reflects that before May 31, 2013, Plaintiff knew that the Suburban Orlando was a hotel, that Defendants rented rooms to Veales, and that Defendants profited each time that she was "forced . . . to have sex for . . . money." (*See* Dkt. 130-1 at 18, 80, 113, 118, 162–63.)  As to the third and fourth elements,

Plaintiff contends that Defendants should have known that they were facilitating her trafficking in violation of the TVPRA because hotel employees repeatedly rented rooms to a nervous, scantily-dressed, and drug-impaired eighteen-year-old who paid in cash, requested copious amounts of towels, littered rooms with used condoms, and, on one occasion, was seen chasing a man through the halls while wearing only her torn underwear. (Dkt. 150 ¶¶ 23–25, 30, 53–57; *see* Dkt. 167 at 3–4, 9–17; Dkt. 168 at 2–3, 15–16.)    According to her deposition testimony, Plaintiff knew the facts supporting these allegations before May 31, 2013. (*See* Dkt. 130-1 at 18, 116–17, 118, 120–22, 124–25, 185–86, 189–91, 193.)    Consequently, Plaintiff's TVPRA claims accrued, and the limitations period began to run, more than ten years before she filed suit. *See Swearingen*, 51 F.4th at 1303; *Karantsalis*, 17 F.4th at 1322–23. Defendants have thus shown that a rational trier of fact could not find for Plaintiff on the timeliness issue. *100079 Can., Inc.*, 954 F. Supp. 2d at 1368; *see Swearingen*, 51 F.4th at 1303. Accordingly, the burden shifts to Plaintiff to identify an exception to the statute of limitations or to show that a tolling provision applies. *Ashcroft*, 391 F. Supp. 2d at 1219.

Plaintiff cites two related doctrines—equitable tolling and the delayed discovery doctrine—to overcome Defendants' statute of limitations defense. (Dkt. 167 at 19–21; Dkt. 168 at 20–21.)    Although these doctrines "are often blended or confused," they are not the same, and they have independent functions. *Fedance v. Harris*, 1 F.4th 1278, 1285 (11th Cir. 2021) (quoting *Rotkiske v. Klemm*, 589 U.S. 8, 18

n.* (2019) (Ginsburg, J., dissenting)). "[E]quitable tolling pauses the running of . . . a statute of limitations[, after it has begun,] when a litigant has pursued [her] rights diligently but some extraordinary circumstance prevents [her] from bringing a timely action." *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). By contrast, the delayed discovery doctrine delays the start of the limitations period "to preserve the claims of victims who do not know [that] they [have been] injured and who reasonably do not inquire as to any injury." *Gabelli v. Sec. Exch. Comm.*, 568 U.S. 442, 449–50 (2013). The court addresses each doctrine in turn.

To establish equitable tolling, Plaintiff bears the burden of showing that she diligently pursued her rights and that extraordinary circumstances ultimately prevented her from filing suit before the limitations period expired. *Lozano*, 572 U.S. at 10. The diligence prong covers matters within Plaintiff's control, whereas the extraordinary circumstances prong covers matters beyond her control. *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016). Ultimately, when determining whether Plaintiff has met her burden, the court must be mindful that "equitable tolling is an extraordinary remedy which should be extended only sparingly." *Arce*, 434 F.3d at 1261 (alteration adopted and quotation omitted).

Plaintiff maintains that the ten-year limitations period should be equitably tolled because she continued to experience extraordinary circumstances upon leaving the Suburban Orlando. (*See* Dkt. 167 at 19–21; Dkt. 168 at 20–21.) Plaintiff fails, however, to explain how she acted diligently in pursuing her claims. For example,

Plaintiff does not explain what steps she took to investigate her claims in the years following her departure from the Suburban Orlando, nor does she explain why she waited so long to file. (*See* Dkt. 167 at 19–20; Dkt. 168 at 20–21.) Rather, Plaintiff admits that she began meeting with her attorneys several years before filing suit (*see* Dkt. 130-1 at 197–99), which itself suggests that equitable tolling is inappropriate, *see Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) ("Equitable tolling is inappropriate when a plaintiff [does] not file an action promptly or fail[s] to act with due diligence.") In any event, simply put, Plaintiff has not shown that she acted with reasonable diligence. *Wilson v. Std. Ins. Co.*, 613 F. App'x 841, 845 (11th Cir. 2015) ("A plaintiff is not reasonably diligent when she fails to investigate basic issues that are relevant to her claim or to proceed with it in a reasonably prompt fashion"); *O'Berry v. State Att'ys Off.*, 241 F. App'x 654, 659 (11th Cir. 2007) (finding that equitable tolling was not warranted where the plaintiff "arguably could have discovered the facts giving rise to his complaint earlier, had he exercised reasonably prudent regard for his rights" (quotation omitted)). As Plaintiff failed to establish that she acted diligently to pursue her rights, the requirements for equitable tolling are lacking. *See Menominee Indian Tribe*, 577 U.S. at 255 (describing diligence and extraordinary circumstances as coequal elements required to establish equitable tolling).

Even if Plaintiff had diligently pursued her claims, she has not shown that extraordinary circumstances prevented her from filing suit before the limitations period expired. *See San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (noting that a plaintiff must show "a causal connection between the alleged extraordinary

circumstances and the late filing" before the court will toll a statute of limitations).
Determining whether a plaintiff has satisfied the extraordinary circumstances prong
"is a fact-specific determination because a finding of extraordinary circumstances
necessary for equitable tolling is reserved for extraordinary facts." *Waller v. Comm'r of
Soc. Sec.*, 168 F. App'x 919, 921 (11th Cir. 2006) (quotation omitted).  The Eleventh
Circuit's decisions in *Arce,* 434 F.3d at 1256–57, and *Cabello v. Fernandez-Larios*, 402
F.3d 1148 (11th Cir. 2005), illustrate when circumstances will warrant equitable
tolling.

In *Arce*, Salvadoran refugees sued officials in their home country's military
regime under the Alien Tort Claims and the Tort Victims Protection Acts, alleging that
they had been kidnapped and tortured during the Salvadoran civil war.  434 F.3d at
1256–57.  Each claim was subject to a ten-year limitations period, yet the plaintiffs
waited until the regime fell, and the limitations period had passed, to file suit.  *Id.* at
1262, 1265.  Throughout the litigation, the defendants argued that the plaintiffs' claims
were time-barred.  *Id.* at 1258–59.  The district court disagreed, concluding that
equitable tolling applied.  *Id.*  On appeal, the Eleventh Circuit affirmed the decision of
the district court, explaining that the record evidence "exemplifie[d] the kind of
'extraordinary circumstances' that . . . require equitable tolling."  *Id.* at 1265.  In
affirming, the Eleventh Circuit noted that the military regime had remained in power
throughout the limitations period and that "the record swelled with evidence" of the
regime's brutality.  *Id.* at 1269.  Further, because the regime acted with impunity, the
Eleventh Circuit observed that the regime would likely "have used its significant

power" to withhold evidence, intimidate witnesses, and thwart any attempt to redress its human rights violations. *Id.* at 1263. Accordingly, the Eleventh Circuit concluded that, regardless of the plaintiffs' diligence, it would have been nearly impossible for them to sue the defendants within the limitations period. *See id.* at 1265.

In *Cabello v. Fernandez-Larios,* 402 F.3d 1148 (11th Cir. 2005), the Eleventh Circuit considered another untimely lawsuit under the Alien Tort Claims Act and the Tort Victims Protection Act. There, the Chilean military tortured and killed Cabello in 1973. *Id.* at 1152. For nearly twenty years thereafter, Chilean officials concealed Cabello's burial site and misrepresented the events surrounding his death. *Id.* Only after the regime collapsed did Cabello's estate learn that he had been tortured. *Id.* at 1152, 1155. Although the estate did not file suit until 1999, the district court equitably tolled the limitations period and concluded that the claims were timely. *See id.* at 1154. On appeal, the Eleventh Circuit agreed that the ten-year limitations period should be equitably tolled because the Chilean government had purposefully concealed the events surrounding Cabello's death, making it nearly impossible for the estate to discover that it had a cause of action until Cabello's body was exhumed in 1990. *Id.* at 1155. This case is distinguishable from *Arce* and *Cabello*.

Plaintiff submits that it would be unfair to start the limitations period before May 31, 2013, because Veales continued to control her after they left the Suburban Orlando and, as a result, she "could not reasonably be expected to pursue her legal rights." (Dkt. 167 at 20; *accord* Dkt. 168 at 20–21.) To support this contention, Plaintiff cites statements from her deposition to show that she was forced to have commercial

sex after leaving the hotel, struggled to understand her relationship with Veales following his arrest, and did not fully comprehend her status as a victim for some time. (*See* Dkt. 167 at 4–5, 20; Dkt. 168 at 3–4, 20–21.)  To bridge the gap between her testimony and the conclusion that she could not timely file suit, Plaintiff cites several opinions from Christi Decoufle, Rochelle Keyhan, and Dr. Noel Busch-Armendariz's expert reports.  (*See* Dkt. 167 at 5–6; Dkt. 168 at 4–5.)  However, Plaintiff cites almost exclusively to general opinions that are not specific to her or this case.  (*See* Dkt. 167 ¶ 16 (citing Dkt. 167-4 at 8–11, 23; Dkt. 167-6 at 12–13, 18–20); Dkt. 168 ¶ 11 (citing Dkt. 168-3 at 8–11, 23; Dkt. 168-5 at 12–13, 18–20; Dkt. 168-20 at 8–10).)  In fact, the only case-specific opinion that Plaintiff appears to cite is Dr. Busch-Armendariz's opinion that Plaintiff "endured emotional, psychological[,] and physical trauma that overwhelmed her psychological defenses, rendering her unable to advocate for herself," (Dkt. 167 ¶ 16 (citing Dkt. 167-6 at 24)), which the court excluded because "Dr. Busch-Armendariz is not qualified to opine on Plaintiff's mental health," (Dkt. 227 at 10–11).

Plaintiff does not allege that Defendants withheld evidence, intimidated witnesses, or otherwise frustrated her attempts to file suit, (*see* Dkts. 167, 168), as was the case in *Arce*, *see* 434 F.3d at 1263.  Nor does she allege that Defendants concealed evidence or misled her about the facts of her case, thereby preventing her from discovering their role in her trafficking, like the regime in *Cabello*.  *See* 402 F.3d at 1155. Instead, this case is more like *Sherrod v. Board of St. Lucie County*, 635 F. App'x 667, 668 (11th Cir. 2015).

In *Sherrod*, a teacher with lupus sued the school board, alleging that it had, among other things, refused his requests for reasonable medical accommodations in violation of the Americans with Disabilities Act. *Id.* at 668–69. The plaintiff's ADA claim was subject to a four-year limitations period, yet he waited until shortly after the limitations period had passed to file suit. *Id.* at 672–73. The district court therefore dismissed the claim as untimely. *Id.* at 669. On appeal, the plaintiff argued that the limitations period should have been tolled because his illness "interfered with his ability to recognize and file an ADA discrimination claim." *Id.* at 673. The Eleventh Circuit rejected this argument, explaining that equitable tolling was inapplicable, as the plaintiff had not shown "that his illness made it impossible for him to file an ADA claim . . . *at any point* within" the limitations period. *Id.* at 673 (emphasis in original).

Like the plaintiff in *Sherrod*, Plaintiff asserts that the court should toll the limitations period for her TVPRA claims because Veales's continued control "interfered with her functioning such that she could not reasonably be expected to pursue her legal rights." (Dkt. 167 at 20; *accord* Dkt. 168 at 20–21.) Plaintiff further contends that these circumstances persisted at least until she learned of Veales's sentence, broke contact with him and his associates, and began to understand her trafficking. (*Id.*) Nonetheless, Plaintiff understood that she was being trafficked in May 2013, before she left the Suburban Orlando. (Dkt. 130-1 at 287.) Plaintiff learned of Veales's sentence later that year and severed ties with him and his associates shortly thereafter. (*Id.* at 83, 170, 319–20; *see* Dkt. 130-8). Thus, even if these circumstances

- 18 -

interfered with Plaintiff's ability to pursue her legal rights, they abated nearly a decade before the limitations period expired.  (*See* Dkts. 167, 168.)  At bottom, Plaintiff has not shown that extraordinary circumstances prevented her from filing suit at any point within the limitations period.  *See Sherrod*, 635 F. App'x at 673; *see also Akins v. United States*, 204 F.3d 1086, 1089 (11th Cir. 2000) (refusing to toll a limitations period where the extraordinary circumstances that purportedly prevented the plaintiff from timely filing suit abated before the limitations period ran).  Accordingly, Plaintiff has not presented sufficient facts to warrant equitable tolling of the ten-year statute of limitations.

Plaintiff also relies on the discovery doctrine to delay the start of the limitations period.  Plaintiff submits that the court should delay the start of the limitations period because a factfinder could conclude that she lacked sufficient information to discover her claims before May 31, 2013.  (Dkt. 167 at 20; Dkt. 168 at 20.)  As discussed, "the statute of limitations clock [generally] begins to tick when the plaintiff first has a complete and present cause of action."  *Barnes v. Compass Bank*, 568 F. App'x 743, 744 (11th Cir. 2014).  When the discovery doctrine applies, it stops the clock from running until the plaintiff either discovers or reasonably should discover that she has been injured.  *See Gabelli*, 568 U.S. at 450.  Although courts have historically applied the discovery doctrine to actions sounding in fraud, some statutes include language incorporating the rule.  *Fedance*, 1 F.4th at 1285; *see Barnes*, 568 F. App'x at 744 (discussing the limited application of the discovery doctrine).  Absent "a clear Congressional directive or a self-concealing violation," the Eleventh Circuit has

cautioned courts not to "graft [the] discovery [doctrine] onto a statute of limitations." *Foudy v. Miami-Dade County*, 823 F.3d 590, 593–94 (11th Cir. 2016).

Plaintiff's argument for applying the discovery doctrine suffers from several defects. First, Plaintiff does not explain why she believes that she lacked sufficient information to discover her claims before May 31, 2013, but it appears that Plaintiff may contend the discovery doctrine should apply because she did not understand that she had a cause of action before that date. (*See* Dkt. 167 at 21 ("The discovery [doctrine] considers more than just whether [Plaintiff] knew [that] she [had been] subjected to physical abuse by Veales; instead, it considers when [Plaintiff] was reasonably able to discover *her claim against WHG*." (emphasis added)).) However, the discovery doctrine is concerned with whether Plaintiff knew the facts accompanying her injury, not whether she understood that those facts gave rise to a cause of action. *Barnes*, 568 F. App'x at 744 ("[T]he delayed discovery [doctrine] . . . prevents a cause of action from accruing until the plaintiff either knows or reasonably should know *of the act* giving rise to the cause of action." (emphasis added and quotation omitted)); *accord Howard v. Ditsworth*, 133 F. App'x 664, 665 (11th Cir. 2005) ("In general, Florida courts have concluded that a plaintiff is deemed to have discovered his right to a cause of action when the plaintiff knew or should have known of the injury. . . . Sheer ignorance of the existence of a cause of action does not serve to postpone the operation of a statute of limitations." (quotation omitted)). Because Plaintiff had personal knowledge of the facts supporting her claims upon leaving the Suburban Orlando in May 2013, (*see* Dkt. 130-1 at 18, 80, 113, 118, 116–17, 120–22, 124–25, 162–63, 185–

86, 189–91, 193), the rule does not apply, *Day v. City of Philadelphia*, No. CIV. A. 94-4112, 1995 WL 304402, at *1 (E.D. Pa. May 18, 1995) (rejecting application of the discovery doctrine where the plaintiff "had personal knowledge of the events" at issue).

Still, even if Plaintiff had not known the facts supporting her TVPRA claims before May 31, 2013, she has not shown that the discovery doctrine applies to her section 1595 claim.  (*See* Dkts. 167, 168.)  Plaintiff does not argue that Congress incorporated the discovery doctrine when drafting the statute, and the text does not support such a conclusion. *See TRW Inc. v. Andrews*, 534 U.S. 19, 22–23 (2001) (finding that a limitations period of "two years from the date on which . . . liability arises" did not incorporate the discovery doctrine); *see also C.C. v. Rashid*, No. 2:23-CV-02056-GMN-BNW, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025) (concluding that "the discovery [doctrine] does not apply to the TVPRA").  Further, although Plaintiff submits that "sex trafficking is a self-concealing injury," she cites no legal authority for this proposition. (Dkt. 167 at 21 (emphasis omitted).)  The cursory nature of Plaintiff's analysis on this point is fatal to her request to apply the discovery doctrine, as a party abandons issues that it raises in passing, asserts perfunctorily, buries within its brief, or uses merely to support other arguments. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681–82 (11th Cir. 2014); *see United States v. Markovich*, 95 F.4th 1367, 1379 (11th Cir. 2024) (concluding that a plaintiff forfeited arguments that were not supported by legal authority); *Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1182 (11th Cir. 2024) (explaining that because the parties are responsible for advancing the facts

and arguments entitling them to relief, a court need not "distill every potential argument that could be made based upon the materials before it on summary judgment").  In any event, Plaintiff has not shown that her sex trafficking was concealed from her.  Thus, Plaintiff has not presented sufficient evidence to show that she is entitled to relief under the delayed discovery doctrine.

## CONCLUSION

Plaintiff's TVPRA claims were subject to a ten-year statute of limitations.  Because she filed suit on May 31, 2023, Plaintiff's claims were timely only if they accrued on or after May 31, 2013.  The record reveals that Plaintiff's trafficking ended on May 29, 2023, and that she left the Suburban Orlando at least several days earlier.  Further, Plaintiff was aware of the horrifying facts supporting her claims upon leaving the hotel.  Accordingly, her claims accrued before May 31, 2013.  Although Plaintiff argues that questions of material fact concerning the application of the equitable tolling and delayed discovery doctrines should defeat Defendants' motions for summary judgment, she failed to identify affirmative evidence creating a genuine dispute of material fact as to the timeliness of her claims.  Consequently, while Plaintiff's victimization and abuse are undoubtedly tragic, unfortunately, there is no dispute of material fact concerning the untimeliness of her claims, and Defendants are entitled to summary judgment.  *See Burr v. Philip Morris USA Inc.*, 559 F. App'x 961, 964 (11th Cir. 2014) (affirming summary judgment because the delayed discovery rule did not apply to otherwise time-barred claims); *McCarley v. KPMG Int'l*, 293 F. App'x 719, 723 (11th Cir. 2008) (affirming summary judgment because the plaintiff failed to show that

the statute of limitations should be equitably tolled); *Myers v. Provident Life & Accident Ins. Co.*, No. 8:19-CV-724-CEH-CPT, 2024 WL 5047362, at *12 (M.D. Fla. Dec. 9, 2024) (granting summary judgment after the plaintiff failed to show that equitable tolling should apply to time-barred claims); *Ellerbee v. Ethicon, Inc.*, No. 8:20-CV-1514-T-60AEP, 2020 WL 5230595, at *5 (M.D. Fla. Sept. 2, 2020) (granting summary judgment because the plaintiff failed to show that the delayed discovery doctrine applied to otherwise time-barred claims).

Accordingly:

1.    Defendants' motions for summary judgment (Dkts. 130, 135, 138) are **GRANTED**.

2.    The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions, and close this case.

**ORDERED** in Orlando, Florida, on December 3, 2025.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record